UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BEVERLY MYERS** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:03CV652 (PCD)** |
| **v.** | : | |
| | : | |
| **CITY OF HARTFORD, ET AL** | : | |
| | : | |
| **Defendants.** | : | **MAY 28, 2004** |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Defendants Edna Negron, D. Anwar Al-Ghani, Jim Boucher, Felix Karsky, Anthony Amato, Ann Bird (the "Individual Defendants), the "State Board of Trustees for the City of Hartford" and the Hartford Board of Education (the "Institutional Defendants") (collectively, the "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment. Summary Judgment should enter in favor of the Defendants on all counts of plaintiff's Amended Complaint.

I.    BACKGROUND

Plaintiff, a former teacher in the Hartford Public Schools, has commenced two actions in connection with her employment and the termination of her employment in the Hartford Public Schools. The first action ("Myers I") is pending before the Judge Thompson and is entitled, Beverly Myers v. John Laverty and City of Hartford, Hartford Public Schools,

3:02CV1152 (AWT).  In that action, Plaintiff seeks damages for alleged race, age and disability discrimination for certain events that are alleged to have occurred while she was employed in the Hartford Public Schools.  Thereafter, this action ("Myers II") was commenced in order to address alleged violations of law in the process of the termination of Plaintiff's employment.

Plaintiff commenced this action on or about April 10, 2003.  Thereafter, this court denied Plaintiff's Motion for Preliminary Injunction.  Ruling on Plaintiff's Motion for Preliminary Injunction (Dkt. #31).  On or about September 5, 2003, Plaintiff filed her Amended Complaint, which is the operative complaint in this action.  On November 19, 2003, this court dismissed Count Nine of the Complaint and dismissed the City of Hartford and Robert Stacy as defendants in this action.  Ruling on Defendants' Motion to Dismiss (Dkt. #43).  Plaintiff did not amend her complaint in response to the Ruling on Defendants' Motion to Dismiss.  The following counts remain in the Amended Complaint:  (1) "Retaliation" under 42 U.S.C. §1983; (2) "Retaliation-Conspiracy" brought under 42 U.S.C. §1985; (3) an equal protection claim based on race and gender under §1983; (4) an equal protection conspiracy claim under §1985; (5) another equal protection claim based on race, gender, age and/or disability under §1983; (6) another equal protection conspiracy claim under §1985; (7) a due process claim under §1983; and (8) a due process conspiracy claim under §1985.

II.    DISCUSSION

    A.    Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In determining when a party has raised a genuine issue of material fact, the Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted). Indeed, a plaintiff may not get to a jury without "any significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249 (quoting, First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 290 (1968)). The moving party's burden may be fulfilled by "pointing out to the District Court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The Second Circuit has stated that the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Yerdon v. Henry, 91 F.3d 370, 374 (2d Cir. 1996), quoting, Anderson, 477 U.S. at 252; see also, Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) ("An inference is not a suspicion or guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist."). Further, the Second Circuit has stated that the non-movant "cannot rely on inadmissible hearsay in opposing a motion for summary judgment." Burlington Coat Factory Warehouse Corp. v. Espirit de Corp., 769 F.2d 919, 924 (2d Cir. 1985). Thus, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985). In fact, the plaintiff's evidence must be precise and specific, and may not be based on conjecture and surmise. Bickerstaff, 196 F.3d at 451 ("affidavits must be based upon 'concrete particulars,' not conclusory allegations."); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999); see also, McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) (plaintiff's rationalizations are insufficient to create genuine issues of material fact). In this case, plaintiff has failed to raise a genuine issue of material fact necessitating a trial.

B.    Plaintiff Has Failed to Assert Any Viable §1983 Claim.

Plaintiff has not presented sufficient evidence at this time to create a genuine issue of

material fact with regard to any of his remaining claims. The record reveals the following:

there were three separate investigations of Plaintiff's conduct in 2001; Plaintiff agrees that the

three investigations concerned serious incidents warranting an investigation; Plaintiff was

suspended with pay effective September 4, 2001; on November 20, 2001, Amato wrote to

Plaintiff and informed her that termination of her employment was under consideration; at her

request, Amato provided a listing of reasons for the termination on or about November 30,

2001; on December 4, 2001, Plaintiff requested a hearing; thereafter, Plaintiff failed to

designate a panel member and, thus, prevented a hearing from being commenced within the

statutory time frame; on February 8, 2002, Amato again notified Plaintiff that termination of

her employment was being considered and listed the reasons therefore; in a letter dated

February 19, 2002, Plaintiff requested a hearing pursuant to Conn. Gen. Stat. §10-151 before

a three member arbitration panel; On February 25, 2002, Amato designated his arbitrator; in a

letter dated February 26, 2002, Plaintiff designated her arbitrator; despite urging by Ms. Bird,

Plaintiff's arbitrator did not contact the Superintendent's arbitrator in order to select a neutral

arbitrator; the American Arbitration Association ("AAA") ended up selecting the neutral

arbitrator in accordance with §10-151(d); during an initial pre-hearing conference, the neutral

arbitrator, Mark Irvings, informed counsel that he would estimate his fees  and both parties

would be required to prepay their share of the fees (per Conn. Gen. Stat. §10-151); at

Plaintiff's request, Mr. Irvings agreed to accept installment payments from her, such that each

hearing day would be prepaid; hearings were conducted on May 13, 14, June 10, 24, 26 and

July 15, 2002; Plaintiff filed the Myers I complaint on July 3, 2002; the hearing lasted longer

than  Mr. Irvings or counsel had originally anticipated; on August 7 and September 4 of 2002,

Mr. Irvings communicated his estimated fees for the estimated time required to conclude the

hearing; the Superintendent paid his share, but Plaintiff did not make any payment; Plaintiff

sought a last minute postponement of the September 13, 2002 hearing; on September 13,

2002, Mr. Irvings addressed the lack of payment by Plaintiff with counsel; Plaintiff and her

counsel rejected several arrangements suggested by Mr. Irvings in order to achieve payment;

Plaintiff's only suggestion was that the hearing be further delayed so that another installment

payment plan could be arranged for the convenience of Plaintiff; after Mr. Irvings conferred

with the other panel members, the hearing was convened and the panel declared that it could

no longer hear the case; on September 30, 2002, Mr. Irvings sent a letter to Thomas Ritter,

Chairman of the State Board of Trustees for the Hartford Public Schools ("State Board"),

explaining that the arbitration panel could not continue as a result of Plaintiff's failure to

prepay Mr. Irvings' fees and further explaining the effect on a neutral arbitrator of being in a

6

creditor relationship with a party; at the November 6, 2002 meeting of the State Board, the

new Superintendent of Schools, Robert Henry (who had replaced Mr. Amato) proposed a

resolution that Plaintiff's employment be terminated; the State Board members, who were not

lawyers,[1] had never been confronted with a similar situation in the past; the State Board met

with its outside counsel, Shipman & Goodwin (specifically, Thomas Mooney) who provided

them with a written opinion letter; the State Board voted on November 6, 2002 to terminate

Plaintiff's employment in accordance with the guidance provided by counsel; and Plaintiff

was paid while on leave from September 4, 2001 through her termination on or about

November 6, 2002.  Plaintiff's situation was unique in that she was not represented by her

union during the termination proceedings and, thus, paid her share of the neutral arbitrator's

fees out of her own pocket.

            1.     There is No Due Process Violation.

      Although Plaintiff attempts to assert retaliation, equal protection and conspiracy

claims, this case turns on the legal question of whether she was unlawfully deprived of her

Fourteenth Amendment due process rights by the Defendants.  In her Amended Complaint,

Plaintiff has failed to specify whether she is asserting a substantive or procedural due process

claim.  However, it is clear that Plaintiff is pursuing a procedural due process claim.

---

[1] Thomas Ritter is an attorney, but had recused himself from this matter and is not a defendant in this action.

The substantive due process clause protects individuals from encroachment on their liberty by outrageous governmental actions, regardless of the implementing procedures, and requires a plaintiff to establish that the defendant's actions were "arbitrary or conscience-shocking in a constitutional sense." Sundbye v. Ogunleye, 3 F. Supp. 2d 254, 261 (E.D.N.Y. 1998) (multiple citations omitted). Nothing in this case suggests outrageous, arbitrary or conscience-shocking governmental behavior. Thus, Plaintiff cannot pursue a substantive due process claim.

Plaintiff's claim is that she was deprived, by the Defendants, of the procedural safeguards attendant to the termination of her employment. For purposes of this motion only, Defendants concede that, as a tenured public school teacher, Plaintiff had a property interest in her employment. Further, the Defendants concede that the termination of her employment was a deprivation of that property interest. However, the Defendants contend that Plaintiff was provided with a pre-deprivation hearing that satisfies Constitutional due process concerns. Thus, Plaintiff has received all of the process that she is due.

"Unlike the existence of a property interest, which finds its origins in state law, 'minimum [procedural] requirements [are] a matter of federal law . . . .'" Ciambriello v. County of Nassau, 292 F.3d 307, 319 (2d Cir. 2002) (citations omitted). Thus, under federal law, "[a]n employee who has a property interest in his employment 'is entitled to oral or

written notice of the charges against him, an explanation of the employer's evidence, and an

opportunity to present his side of the story,' before he is subjected to the loss of

employment.'" Munafo v. Metropolitan Trans. Auth., 285 F.3d 201, 212 (2d Cir. 2002)

(quoting, Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546 (1985)); see also,

Loudermill, 470 U.S. at 542 ("We have described 'the root requirement' of the Due Process

Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived

of any significant property interest.'"). A pre-termination hearing need not be "elaborate" and

"need not definitively resolve the propriety of the discharge." Loudermill, 470 U.S. at 545.

However, "if the state affords a remedy for alleged violations of due process, the plaintiff may

not complain about the sufficiency of a due process remedy by singling out one stage in the

administrative proceedings and ignoring the rest of the array of procedures available to him."

Munafo, 285 F.3d at 213.

  Connecticut, by statute, provides tenured public school teachers with specific

procedures to contest the proposed termination of their employment. Connecticut General

Statutes §10-151(d). The statute provides all of the protections due a tenured teacher under

the Fourteenth Amendment's due process clause as well as additional protections under state

law. Thus, the statute provides broader protections than those afforded by the federal due

process clause. Thus, while failure to follow precisely the terms of Conn. Gen. Stat. §10-151

might provide a tenured teacher with remedies under state law, such a failure would not necessarily result in a violation of federal procedural due process rights. Ciambriello, 292 F.3d at 319 & 322 n.8 ("The Constitution, not state law sources such as the CBA, determines what process is due.").

Under the statute, the tenured teacher is entitled to written notice that termination of the teaching contract is under consideration and, if requested, a written statement of the reasons therefore. Conn. Gen. Stat. §10-151(d). The teacher is also afforded the opportunity to make a written request for a hearing. The hearings may be conducted before: (a) the board of education or a subcommittee thereof; (b) an impartial hearing panel; or (c) an agreed-upon single impartial hearing officer. If the teacher opts for an impartial three member hearing panel, one panel member is selected by the Superintendent, one by the teacher and, if the two panel members cannot select a third neutral arbitrator, the AAA selects the neutral arbitrator. If the AAA fails to select the neutral arbitrator within 5 days, the right to an impartial panel is lost and the hearing is conducted before the board of education or a subcommittee thereof. After the impartial hearing panel has submitted its written findings and recommendations to the board of education, the final decision rests with the board of education, which gives its written decision on the matter. In instances where the tenured teacher selects an impartial arbitrator or panel of arbitrators, "Each party shall pay the fee of the panel member selected

by it and shall share equally the fee of the third panel member or hearing officer and all other

costs incidental to the hearing." Conn. Gen. Stat. §10-151(d). Under §10-151(e), a "teacher

aggrieved by the decision of the board of education after a hearing as provided in subsection

(d) of this section may appeal therefrom, within thirty days of such decision, to the Superior

Court."

      In this case, there is no dispute that: Plaintiff was provided with written notice that

termination of her employment was under consideration and a written listing of the reasons

therefore; Plaintiff requested a hearing in writing; Plaintiff elected a hearing before a three

member panel; the Superintendent promptly designated his panel member; Plaintiff eventually

selected her panel member; the AAA selected the neutral panel member without objection;

and six days of hearings were held. Thus, the question of whether Plaintiff was afforded due

process under federal law prior to her termination boils down to the question of whether she

was afforded an "opportunity for hearing appropriate in the nature of the case." Loudermill,

470 U.S. at 542. The record further reveals that: after six days of hearings, additional hearing

days were necessary; the Superintendent prepaid his share of the costs of the neutral

arbitrator; Plaintiff failed to prepay her share of the neutral arbitrator's fees prior to or at the

September 13, 2002 hearing; as a result of Plaintiff's failure to prepay the neutral arbitrator's

fees for the September 13, 2002 hearing and the ensuing discussions, the arbitration panel

concluded that it could not continue to hear the case; and, on or about September 30, 2002,

the neutral arbitrator wrote to the Chairman of the State Board and reported on the panel's

proceedings and inability to provide findings and a recommendation.

Based on the undisputed record, Plaintiff was provided with an "opportunity" to be

heard prior to the termination of her employment. By statute, Plaintiff had the option of a

hearing before the State Board or a subcommittee thereof. Plaintiff bypassed that option and,

instead, selected and requested a hearing before a three member hearing panel. In selecting

that option, Plaintiff was on notice that she was responsible for one-half of the neutral

arbitrator's fees, as well as the fees of the arbitrator that she selected. Moreover, she was put

on notice of the need for prepayment of the neutral arbitrator's fees during the pre-hearing

conference. Six days of hearings were held in front of the arbitration panel before Plaintiff

failed to prepay the neutral arbitrator's fees for the seventh day of hearings. Having exercised

her right to an "opportunity" to be heard, Plaintiff failed to fully avail herself of such

opportunity by failing to prepay the neutral arbitrator's fees and, thus, compromised his

neutrality in the proceeding. See, September 30, 2002 Letter from Mark Irvings to Thomas

Ritter.[2]

---

[2] Additionally, Plaintiff's counsel and arbitrator appeared before the State Board on November 6, 2002 and spoke on Plaintiff's behalf. See, Minutes of the November 6, 2002 Meeting of the State Board (attached as Exhibit 2 to the Affidavit of Webster Brooks).

The fact that the hearing panel never issued findings or a recommendation to the State Board is immaterial to the question of whether Plaintiff had an opportunity to be heard. Plaintiff was given the opportunity to be heard but failed to make the most of that opportunity. As such, Plaintiff received all of the process that she was due.

Public policy reasons also militate in favor of a finding that Plaintiff received all of the process that she was due. A finding that Plaintiff was denied her procedural due process rights in this case would reward Plaintiff for her failure to prepay the neutral arbitrator. Indeed, if the court rewarded Plaintiff for her behavior and the Superintendent of Schools were forced to recommence termination proceedings against her, the likely result is a repeat of the current situation.[3] Moreover, other tenured teachers facing termination proceedings would be likely to adopt a similar strategy of failing to pay arbitrators in order to delay or prevent the termination of their employment.[4] School districts would effectively be blocked from terminating and replacing incompetent and dangerous teachers. Additionally, in this case, the State Board could not have simply decided to complete the hearing itself or to start a new

---

[3] Indeed, there is little doubt that Plaintiff sought to elongate these proceedings. Plaintiff was on paid suspension starting on September 4, 2001. Thus, each day that Plaintiff successfully avoided final action by the State Board was another day that she received pay for staying home. At various points in the proceedings, Plaintiff failed to select an arbitrator, sought continuances and, on September 13, 2002, refused various solutions proposed by Mr. Irvings and only suggested further postponements until she could prepay the neutral arbitrator's fee over time. Clearly, it was in Plaintiff's interests to delay these proceedings and she succeeded in doing so.

[4] As Mr. Mooney notes in his opinion letter, "During the hearing process, the teacher continues to receive his/her regular pay, because the teacher continues to have a contract of employment unless and until the board of education terminates the contract." See, Exhibit 1 to the Affidavits of Negron, Al-Ghani, Boucher and Karsky.

hearing because Plaintiff had already elected a three member panel hearing and the State

Board was not authorized by statute or otherwise to conduct further hearings.  Therefore,

summary judgment should enter in favor of the Defendants on the Seventh Count of the

Amended Complaint.

      2.    There is No Claim for Retaliation and No Evidence Thereof.

In the First Count of the Amended Complaint, Plaintiff attempts to assert a claim of

"retaliation" under 42 U.S.C. §1983.  In that count, Plaintiff claims that she was terminated in

retaliation for "her exercise of rights described in paragraph 27 hereof."  Paragraph 27 states:

"The hearing adjourned without further action of the Board on Item 31 of its agenda."

Presumably, Plaintiff meant to cite paragraph 29 where she alleges that she filed the Myers I

complaint in July of 2002.

The Second Circuit has not recognized any claim for retaliation under the Fourteenth

Amendment's equal protection clause.  Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1998)

("we know of no court that has recognized a claim under the equal protection clause for

retaliation following complaints of racial discrimination.  Given the availability of Title VII,

which Bernheim chose not to invoke, we see no reason to break new constitutional ground in

this case.").  Likewise, it does not appear that Plaintiff has invoked the First Amendment as

neither the First Amendment nor her speech have been referenced in the Amended Complaint.

Thus, the First Count fails to state a cause of action.[5]

However, even if the court were to find that the First Count of the Amended

Complaint somehow made out a First Amendment retaliation claim, such claim must still fail.

In order to make out a prima facie case of a First Amendment violation, "a government

employee must show that: (1) his speech can be 'fairly characterized as constituting speech

on a matter of public concern,' and (2) the speech was at least a 'substantial' or 'motivating'

factor in the discharge." Sheppard v. Beerman, 317 F.3d 351, 355 (2d Cir. 2003), cert.

denied, 124 S. Ct. 135 (2003). "A government official may nonetheless fire an employee for

speaking on a matter of public concern if the employee's speech is reasonably likely to disrupt

the effective functioning of the office, and the employee is fired to prevent this disruption."

Id.

In Connick v. Myers, 461 U.S. 138, 147 (1983) (citations omitted), the Supreme Court

explained:

> We hold only that when a public employee speaks not as a citizen upon matters
> of public concern, but instead as an employee upon matters only of personal
> interest, absent the most unusual circumstances, a federal court is not the
> appropriate forum in which to review the wisdom of a personnel decision taken

---

[5] Indeed, Plaintiff has not alleged that she was retaliated against for any testimony in that case. As reflected in Exhibit A, Plaintiff's deposition in the Myers I case did not occur until February 19, 2004. Thus, the Defendants could not have retaliated against Plaintiff by terminating her for any testimony in that case.

> by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.
>
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. n.7 [n.7: The inquiry into the protected status of speech is one of law, not of fact . . . .].

In this case, there can be no debate that plaintiff's complaint in <u>Myers I</u> relates solely to matters of her personal interest and not to matters of public concern.

Further, even if the court were to find that the First Count stated some sort of recognized retaliation claim under §1983, there is absolutely no evidence to suggest that any of the Defendants retaliated against Plaintiff for filing the complaint in <u>Myers I</u> in July of 2002. Indeed, Plaintiff was suspended with pay on September 4, 2001 and put on notice by Mr. Amato on November 8, 2001 that termination of her employment was under consideration. Obviously, this was long before the <u>Myers I</u> complaint was filed. Robert Henry, not Anthony Amato, proposed the resolution on November 6, 2002 to terminate Plaintiff's hearing. The State Board adopted the resolution based on the advice of counsel, almost one year after the termination proceedings were originally commenced. The termination came after the three member arbitration panel was forced to conclude its work as a result of Plaintiff's failure to prepay the neutral arbitrator's fees. Plaintiff simply has not

16

presented any evidence to suggest that she was illegally retaliated against when her employment was terminated on or around November 6, 2002. Accordingly, summary judgment should enter in favor of the Defendants on the First Count of the Amended Complaint.

3.    The Equal Protection Claims Must Fail.

In the Third and Fifth Counts of the Amended Complaint, Plaintiff alleges that she was denied her Fourteenth Amendment equal protection rights on the basis of her race, gender, age and/or disability when she was terminated. The Fourteenth Amendment's right to equal protection "is essentially a direction that all persons similarly situated should be treated alike." Barton v. City of Bristol, 294 F. Supp. 2d 184, 194 (D. Conn. 2003) (citing, Lawrence v. Texas, 539 U.S. 558 (2003)). The equal protection clause is violated when "the state distinguishes between individuals based on 'unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate government objective.'" Bernheim, 79 F.3d at 323.

In this case, Plaintiff has yet to provide any admissible evidence suggesting that any of the Defendants took any actions against Plaintiff based on her race, gender, age or alleged disability. Indeed, Plaintiff did not take the depositions of any of the Defendants in this case. Although she alleges that, under Amato's leadership, "black employees, especially black female employees, were targeted for discipline and termination, far more than were non-black

17

employees, and non-black employees were promoted more than were black employees,"

Plaintiff has yet to offer any admissible evidence to sustain such allegations. Plaintiff simply

relies on mere speculation and conjecture. Myers II Tr. at 61-68 & Exhibit 8 thereto (at

Interrogatory 10).[6]  In the absence of admissible evidence of illegal discrimination, summary

judgment should enter in favor of the Defendants. See e.g., Grillo v. New York City Transit

Authority, 291 F.3d 231, 235 (2d Cir. 2002) ("Even if [plaintiff's] highly dubious claim that

he was singled out for punishment by the instructors is credited, [plaintiff] has 'done little

more than cite to [his alleged] mistreatment and ask the court to conclude that it must have

related to [his] race. This is not sufficient.'").

      Given this state of the record, Plaintiff has failed to assert a cognizable claim under the

Fourteenth Amendment's equal protection clause.

      C.    There is No Evidence to Support the Conspiracy Claims.

      In the Second, Fourth, Sixth and Eighth Counts of the Amended Complaint, Plaintiff

has asserted conspiracy claims designed to mirror the retaliation, equal protection and due

process claims asserted in the First, Third, Fifth and Seventh Counts. Although Plaintiff does

---

[6] In her deposition, Plaintiff admitted that she is suing Anthony Amato because he was the Superintendent and had the "last say so." Myers II Tr. (Exhibit B) at 22-24.

not specify the subsection of §1985 under which she is asserting her claims, the only possible section of that statute under which she could be proceeding is subsection (3).[7]

"The four elements of a §1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" Mian, 7 F.3d at 1087.[8]

In this case, as stated above, Plaintiff has not come forward with any admissible evidence to suggest that any of the Defendants were motivated by racial animus in undertaking the actions that they performed. In the absence of evidence that she was discriminated against on the basis of her race, Plaintiff's conspiracy claims must fail. See

---

[7] Subsection (1) deals with conspiracies to prevent a person from accepting a public office or similar position while subsection (2) addresses conspiracies to prevent or deter witnesses from testifying in a federal case.
[8] Plaintiff cannot proceed with any claims of a §1985(3) conspiracy based on age or alleged disability because such claims are governed by the ADEA and the ADA or Rehabilitation Act, which have their own enforcement and conciliation mechanisms and, thus, preclude a claim under §1985(3). Medvey v. Oxford Health Plans, 2004 U.S. Dist. LEXIS 6229 at *13 (D. Conn. March 18, 2004) (citing, Sherlock v. Montefiore Medical Ctr., 84 F.3d 522, 527 (2d Cir. 1996)).

19

e.g., Mian, 7 F.3d at 1087. In the absence of a viable due process, retaliation or equal protection claim pursuant to §1983, Plaintiff's conspiracy claims cannot stand.

Further, a plaintiff asserting a claim pursuant to §1985(3) "must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Thomas v. Roach, 165 F.3d 137, 147 (2d Cir.), cert. denied, 528 U.S. 828 (1999). Plaintiff's allegations regarding the alleged conspiracy are conclusory and vague, at best, and fail to "establish the existence of an agreement among the defendants to deprive [plaintiff] of his constitutional rights." Thomas, 165 F.3d at 147. Accordingly, summary judgment should enter in favor of the Defendants on the Second, Fourth, Sixth and Eighth Counts of the Amended Complaint.[9]

D.    The Individual Defendants Are Entitled to Qualified Immunity.

Summary judgment should enter in favor of the remaining defendants because they are qualifiedly immune from liability. To the extent that Plaintiff has articulated a §1983 claim,

---

[9] Plaintiff alleges in the Sixth and Eighth Counts that the State Board "met illegally in secret and, on information and belief, terminated Ms. Myers without engaging in public debate or creating a record of the vote to terminate." Amended Complaint at ¶¶43 & 49. This assertion is completely undermined by the minutes of the November 6, 2002 meeting. Exhibit 2 to the Brooks Aff't. However, even if the allegations were accepted as true, there is nothing in Conn. Gen. Stat. §10-151(d) requiring the State Board to meet or vote publicly on Plaintiff's termination after Plaintiff elected the three member hearing panel. The State Board was simply required to give Plaintiff a written decision after receiving findings and recommendations from the arbitration panel. If Plaintiff believed that the State Board met illegally, she was free to file a complaint with the Connecticut Freedom of Information Commission. However, these allegations do nothing to support either her §1983 or §1985(3) claims against the Defendants.