the Individual Defendants have not violated any clearly established right belonging to

Plaintiff.

Qualified immunity protects government officials in their individual capacities when

they are performing discretionary functions and when their conduct does not violate clearly

established federal statutory or Constitutional rights of which a reasonable person would have

known at the time in question. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Indeed,

qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation,

conditioned on the resolution of the essentially legal [immunity] question." Behrens v.

Pelletier, 516 U.S. 299, 306 (1996); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In order

to protect this entitlement, district courts are obligated to exercise their discretion to protect

the substance of the qualified immunity defense. Crawford-El v. Britton, 523 U.S. 574, 598

(1998).

"A government official sued in his individual capacity is entitled to qualified

immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where

that conduct was prohibited, if the plaintiff's right not to be subjected to such conduct by the

defendant was not clearly established at the time it occurred; or (3) if the defendant's action

was 'objectively reasonable[] . . . in light of the legal rules that were clearly established at the

time it was taken.'" Munafo v. Metropolitan Transportation Authority, 285 F.3d 201, 210 (2d

Cir. 2002) (multiple citations and internal citations omitted). "The issue of 'whether the plaintiff has asserted a violation of a constitutional right at all' is a 'purely legal question.'" Munafo, 285 F.3d at 211 (quoting, Siegert v. Gilley, 500 U.S. 226, 232 (1998)).

In determining whether a right is clearly established for these purposes, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free School Dist., 187 F.3d 272, 278 (2d Cir. 1999). Thus, the Second Circuit has stated, "[t]he unlawfulness must be apparent." Id. Moreover, district courts have been admonished to avoid defining the constitutional right at issue too broadly. Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir. 1999), cert. denied, 528 U.S. 823 (1999) ("The relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech.").

1.    Defendants Negron, Al-Ghani, Boucher and Karsky.

Defendants Negron, Al-Ghani, Boucher and Karsky were all members of the State Board. Their personal involvement in the events of this lawsuit is limited to being present at the meeting on November 6, 2002 and participating in a vote on a resolution terminating

Plaintiff's employment. <u>See</u>, Amended Complaint at ¶4 & 24; Myers II Tr. at 20-21.[10] The

State Board members' vote on whether or not to terminate Plaintiff's employment is

undeniably a discretionary act.

    As discussed above, Connecticut General Statutes §10-151 does not address or

contemplate a situation in which the tenured teacher fails to timely pay her portion of the

neutral arbitrator's fees.[11]  Moreover, the undersigned is not aware of any caselaw squarely

addressing this situation.  Not surprisingly, the State Board had not confronted a situation

similar to one presented by this case.  In short, the State Board defendants were faced with an

issue of first impression.  Therefore, they turned to a recognized expert in the field of

Connecticut school, Thomas Mooney.

    Attorney Mooney provided the State Board members with a memorandum discussing

the statutory process for terminating tenured teachers, the facts as reported by Mr. Irvings,

options and his recommendation.  In his legal opinion, Mr. Mooney's stated, "Given that there

is no statutory provision or judicial precedent for this situation, it is simply not clear whether a

court on review would concur that it is appropriate to terminate the teacher's contract based

---

[10] Although Plaintiff speculates, in the Amended Complaint at ¶28, that the State Board met and voted in secret on November 6, 2002, the minutes of the State Board's meeting clearly state, "The motion was approved by voice vote." Exhibit 2 to the Affidavit of Webster Brooks (Exhibit I).  To date, Plaintiff has not offered any admissible evidence to suggest that the vote to terminate Plaintiff's employment occurred outside of the November 6, 2002 meeting.  Moreover, the question of whether or not the vote occurred outside of the November 6, 2002 meeting has no bearing on the inquiry.

[11] In the normal case, the teacher is represented by her union and the union pays its portion of the fees.

on the letter from Mr. Irvings and the related transcript." Mooney Opinion Letter at p. 5. Since Negron, Al-Ghani, Boucher and Karsky were not lawyers and this was a unique situation, the State Board defendants, not surprisingly, followed the advice of counsel in voting to terminate Plaintiff's employment. Affidavits of Negron, Al-Ghani, Boucher and Karsky.

If neither the applicable statute nor the caselaw addresses the situation presented in this case and if an expert in the field of Connecticut school law can only provide guidance that carries with it "significant risk"[12], Plaintiff's alleged right is not clearly established. A reasonable person standing in the shoes of Negron, Al-Ghani, Boucher and Karsky could not be expected to know that their actions were unconstitutional. To paraphrase McCollough, the unlawfulness of their actions was not apparent. Clearly, the reasonable and prudent course of action for Negron, Al-Ghani, Boucher and Karsky at that point in time was to follow the advice of counsel, which they did.

Even if the legal advice that they received was incorrect and the court were to somehow find that their actions were a clear violation of well established law, Negron, Al-Ghani, Boucher and Karsky would still be entitled to the protections of qualified immunity. In such a scenario, Negron, Al-Ghani, Boucher and Karsky would be entitled to the

---

[12] Mooney Opinion Letter at pp. 3, 5.

"extraordinary circumstances" exception to a seeming lack of immunity. <u>Croslan v. Housing Authority for the City of New Britain</u>, 974 F. Supp. 161, 165 (D. Conn. 1997) ("Even if the law was clearly established, if an official 'claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained.'") (quoting, <u>Harlow</u>, 457 U.S. at 819). Again, in this case, neither Negron, Al-Ghani, Boucher nor Karsky is a lawyer. They had never encountered a situation like the one presented in this case. They relied on the advice of a known expert in the field of Connecticut school law. If the advice of Mr. Mooney was wrong, Negron, Al-Ghani, Boucher and Karsky should not be held personally liable for acting in accordance with the advice of counsel. Therefore, Negron, Al-Ghani, Boucher and Karsky are entitled to the protections of qualified immunity.

   2. <u>Ann Bird</u>

  Ann Bird is also entitled to qualified immunity. In the Amended Complaint, Attorney Bird is alleged to have done the following: served as the Associate Corporation Counsel for the City of Hartford and served as counsel at meetings of the State Board of Education (¶6); been present on September 13, 2002 when Mr. Irvings spoke to Plaintiff and her counsel regarding Plaintiff's failure to prepay Mr. Irvings' fee (¶18); disclosed the nature, amount and manner of payment of Plaintiff's most recent paycheck and same information about the next

expected paycheck and published such information to other panel members and on the record, which somehow "further contributed to a breach of ethics which had occurred and prejudiced Ms. Myers position with Mr. Irvings" (¶¶19-20); "wrongfully, maliciously and deceptively placed a motion before the State Board of Education, falsely claiming that Ms. Myers had waived her right to a hearing under §10-151b(b)" (¶23), "knowingly acted in concert (with Amato and Stacy) to make false representations to the State Board of Education and placed before it a Motion to Terminate Ms. Myers based on such false representations" (¶¶42, 48).

The record reveals that Attorney Bird, who is employed by the City of Hartford as an Assistant Corporation Counsel, represented the Superintendent in the hearings regarding Plaintiff's proposed termination. Bird Aff't. at ¶8 & Exhibit 4 thereto. Because she represented the Superintendent in this matter, she felt that she could not represent the State Board due to the potential conflict of interest. Bird Aff't. at ¶29. Instead, the State Board chose to be represented and advised by Thomas Mooney of Shipman & Goodwin, LLP. Bird Aff't. at ¶30 & Affidavits of Negron, Al-Ghani, Boucher and Karsky.

As to the allegations of Attorney Bird disclosing or publishing information regarding Plaintiff's pay, there is absolutely nothing illegal about such conduct. Plaintiff was a public employee whose salary is determined by a collective bargaining agreement and whose payroll information is public information. See, Conn. Gen. Stat. §1-210. Thus, it is difficult to see

26

how such alleged conduct could be considered a deprivation of Plaintiff's Constitutional rights.

Finally, she is alleged to have placed a motion before the State Board and made false representations to the State Board regarding Plaintiff waiving any right to a hearing under the applicable statute.[13]   Certainly, Attorney Bird determined that, in her opinion, Plaintiff had waived her right to any further hearing as a matter of law and advised the Superintendent of her opinion. Bird Aff't. at ¶31.  She also drafted a resolution, based on her opinion, for the Superintendent's consideration. Bird Aff't. at ¶32.  Superintendent Henry submitted a proposed resolution for consideration by the State Board on this matter.  See, Mooney Opinion Letter at 1 (Exhibit 1 to the Affidavits of Negron, Al-Ghani, Boucher and Karsky). Attorney Bird did not address the State Board at their meeting on November 6, 2002 in connection with this issue.  Bird Aff't. at ¶33; Minutes of the November 6, 2002 meeting (Exhibit 2 to the Brooks Aff't. [Exhbit I]).

Again, the first inquiry is to determine whether Plaintiff has made out a constitutional claim against Attorney Bird.  For the reasons stated above, the Defendants do not believe that Plaintiff has stated a viable §1983 claim against any of the Defendants.  Certainly, Plaintiff has not produced any evidence whatsoever to suggest that Attorney Bird's alleged actions

---

[13] Plaintiff misidentifies the statute in her Amended Complaint.  The correct statute is Conn. Gen. Stat. §10-151(d).

were in any manner motivated by intentional race, gender, age or alleged disability

discrimination.  Moreover, Attorney Bird's actions did not proximately cause Plaintiff's

termination.

> The Second Circuit has explained:

> Civil actions brought under §1983 are analogous to state common law tort
> actions, serving primarily the tort objective of compensation. A §1983 action,
> like its state tort analogs, employs the principle of proximate causation.
> Although proximate causation in the §1983 context is a question of federal
> law, in determining the meaning of the concept we look to those state court
> analogs, because the Supreme Court has made it crystal clear that principles of
> causation borrowed from tort law are relevant to civil rights actions brought
> under §1983.

Barnes v. Anderson, 202 F.3d 150, 158 (2d Cir. 1999) (multiple citations and quotation marks

omitted).  Thus, in order to prevail on a §1983 claim against a person, the plaintiff is required

to prove that the defendant caused the deprivation of his or her rights.  Taylor v. Brentwood

Union Free School Dist., 143 F.3d 679, 686 (2d Cir. 1998), cert. denied, 525 U.S. 1139

(1999).  "The Supreme Court consistently has refused to impose §1983 liability upon

defendants where the causal connection between their conduct and the constitutional injury is

remote rather than direct."  Taylor, 143 F.3d at 686.  "Although a §1983 claim has been

described as a species of tort liability, . . . it is perfectly clear that not every injury in which a

state official has played some part is actionable under that statute."  Id., (quoting, Martinez v.

California, 444 U.S. 277, 285, 100 S. Ct. 553 (1980)).

28

In this case, there were several events that superseded any causal connection between Attorney Bird's alleged actions and Plaintiff's termination. See, Townes v. City of New York, 176 F.3d 138, 147 (2d Cir.), cert. denied, 528 U.S. 964 (1999) ("In the common law, '[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'"). First, by statute, only the State Board had the ability to terminate Plaintiff's employment. Conn. Gen. Stat. §10-151(d). Second, Attorney Bird did not have the power or authority to commence any termination proceedings against Plaintiff—the statute reserves that role to the Superintendent. Conn. Gen. Stat. §10-151(d). Further, Attorney Bird did not commence termination proceedings against Plaintiff. Third, Attorney Bird did not propose the resolution terminating Plaintiff's employment—Superintendent Henry did that. See, Mooney Opinion Letter. Rather, Attorney Bird did not stray outside of her role in this matter as counsel to the Superintendent. Fourth, the State Board took action on the Superintendent's proposed resolution in accordance with the advice of Attorney Mooney. All of these actions were superseding causes of Plaintiff's alleged Constitutional injuries. See, Taylor, 143 F.3d at 687 ("Specifically, we believe that the independent investigations of the incidents involving [two students] and the other events culminating in the decision of the disciplinary hearing panel to suspend Taylor constitute a superseding cause of

29

Rooney's injury, breaking the causal link between any racial animus Rooney may have had

and the suspension."); see also, Jeffries v. Harleston, 52 F.3d 9 (2d Cir.), cert. denied, 516

U.S. 862 (1995). Thus, Plaintiff has not asserted a viable Constitutional claim against

Attorney Bird.

Even if the court finds that Plaintiff has asserted some viable Constitutional claim

against Attorney Bird, she is entitled to qualified immunity because the alleged right was not

clearly established at the time that she acted, as described more fully above. In

recommending Plaintiff's termination to the Superintendent, Attorney Bird gave a legal

opinion regarding a situation that was not addressed by the applicable statute or case law.

Plaintiff simply disagrees with Attorney Bird's opinion.

Finally, given the unique situation presented in this case, it was objectively reasonable

for Attorney Bird to believe that her actions did not violate clearly established law. After all,

she was simply acting as a lawyer in this situation. Therefore, Attorney Bird is entitled to the

protections of qualified immunity.

        3.     Anthony Amato

Anthony Amato is also entitled to the protections of qualified immunity in this case.

In her deposition, Plaintiff testified that she is suing Mr. Amato because he was the

Superintendent and had "the last say so." Myers II Tr. at 22-24. The record reveals that Mr.

30

Amato notified Plaintiff that termination of her employment was under consideration after she had been suspended after investigations of three serious incidents. Plaintiff elected a hearing and the hearings proceeded. By the time of the November 6, 2002 State Board meeting, Mr. Amato was no longer the Superintendent of Schools. Amato Aff't. at ¶15. He did not suggest or place a proposed resolution before the State Board for its November 6, 2002 meeting. Amato Aff't. at ¶15; see also, Mooney Opinion Letter at 1.

Thus, while Mr. Amato's November 20, 2001 letter informing Plaintiff that termination of her employment was under consideration may have set the process in motion, several superseding events cut the causal link to Plaintiff's termination. First, Plaintiff elected a three panel arbitration panel and then failed to prepay the neutral arbitrator's fee for the additional arbitration sessions. Second, Superintendent Robert Henry submitted, for consideration by the State Board, a proposed resolution to terminate Plaintiff's employment. Third, the State Board was advised by their counsel regarding Mr. Henry's proposed resolution. Fourth, the State Board voted to terminate Plaintiff's employment on November 6, 2002. These superseding events break any causal link between Plaintiff's termination and Mr. Amato's actions. Therefore, Mr. Amato cannot be held liable under §1983 and summary judgment should enter in favor of Mr. Amato on all claims asserted against him.

Even if the court finds that Plaintiff has asserted a viable Constitutional claim against

him, the constitutional right that Mr. Amato allegedly violated was not clearly established, as

discussed above. Finally, it was objectively reasonable for Mr. Amato to believe that his

actions, in commencing a teacher termination proceeding against Plaintiff in accordance with

Conn. Gen. Stat. §10-151, did not violate Plaintiff's Constitutional rights. Therefore, Mr.

Amato is entitled to the protections of qualified immunity.


    E.    <u>The Institutional Defendants are Not Proper Defendants in this Case</u>.

          1.        <u>The State Board of Trustees for the City of Hartford Does Not and Did Not Exist.</u>

In the caption of the Amended Complaint, Plaintiff lists the "State Board of Trustees

for the City of Hartford" as a defendant in this action. In paragraph 5 of the Amended

Complaint, such entity is only described as the "State Board of Trustees." No such entity

existed during the relevant period of time covered by this action. <u>See</u>, Affidavit of Ann Bird,

Exhibit H at ¶35; <u>cf.</u>, Special Acts 97-4 & 01-7 (Exhibits F & G). Because liability under 42

U.S.C. §1983 may only lie against a "person" and the State Board of Trustees for the City of

Hartford never existed during the relevant time period, the State Board of Trustees for the

City of Hartford is entitled to summary judgment on all counts of the Amended Complaint.

2.        The State Board of Trustees for the Hartford Public Schools is
Entitled to Sovereign Immunity and Eleventh Amendment
Immunity.

In the event that the court finds that the State Board of Trustees for the Hartford Public

Schools ("State Board") (an entity that existed during the relevant time period) is a defendant

in this case, summary judgment should enter in favor of the State Board because it is entitled

to sovereign immunity and Eleventh Amendment immunity. The Supreme Court has squarely

held that a state and its officials acting in their official capacities are not persons within the

meaning of §1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 71 (1989). Of

course, §1983 provides in relevant part that: "Every person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be

subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law . . ." Naturally, because §1983 only subjects "persons" to liability and because

the state is not a person for §1983 purposes, the state cannot be held liable for damages under

§1983.

The State Board was established by the Connecticut General Assembly through

Special Act 97-4. State Board members were selected by the Governor and legislative leaders

within the General Assembly. Special Act 97-4(3). The State Board was created in response

33

to a legislative finding that the Hartford schools were in a state of crisis and the General

Assembly made the State Board solely responsible for the management of the Hartford school

district. Special Act 97-4(1), (2). As such, the State Board was the state agency created by

the General Assembly to govern, manage and oversee the finances of the Hartford school

system. This court has opined, in dicta, that the State Board is entitled to the protections of

sovereign immunity. Lee v. City of Hartford/Hartford Public Schools, 289 F. Supp. 2d 25, 30

n.2 (D. Conn. 2003). Therefore, the State Board is entitled to the protections of sovereign

immunity and Eleventh Amendment immunity. Consequently, summary judgment should

enter in favor of the State Board on all counts of the Amended Complaint.

        3.        The Reconstituted Hartford Board of Education Could Not
                        Have Engaged in Any Unconstitutional Behavior.

The record reveals that: Plaintiff's employment with the Hartford Public Schools was

terminated by the State Board at its meeting on November 6, 2002; and the reconstituted

Hartford Board of Education did not come into existence until December 3, 2002. Special

Act 97-4(2) specifically provided that the Hartford Board of Education in existence on the

effective date of that special act was dissolved effective June 1, 1997. Special Act 01-7(1)(b)

& (2)(b) provided that "from December 3, 2002 to December 5, 2005," the Hartford school

district would be managed by the reconstituted Hartford Board of Education in accordance

with the Special Acts.

Therefore, during the relevant time period, neither the former Hartford Board of Education nor the reconstituted Hartford Board of Education were "persons" who could have subjected Plaintiff to a deprivation of her constitutional rights, as required by §1983.  In addition, [t]he Second Circuit has long held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  Further, in order to prevail on a §1983 claim against a person, the plaintiff is required to prove that the defendant proximately caused the deprivation of his or her rights.  Taylor, 143 F.3d at 686.  Obviously, if the reconstituted Hartford Board of Education (or the former Hartford Board of Education) did not exist when Plaintiff was allegedly deprived of her Constitutional rights, it could neither have been personally involved in the alleged deprivation of the right nor proximately caused Plaintiff's constitutional injuries.  Likewise, if the reconstituted Hartford Board of Education did not exist during the relevant time period, it could not possibly have been a party to a conspiracy. Therefore, summary judgment should enter in favor of the Hartford Board of Education on all counts.

F.    Plaintiff Cannot Establish Monell Liability Against Any Institutional Defendant.

In the event that the court finds that the State Board is not entitled to sovereign or Eleventh immunity or that the Hartford Board of Education could somehow be subjected to

liability, all of Plaintiff's claims against such entities should be dismissed because Plaintiff

cannot establish a pattern, practice or custom to discriminate against employees on the basis

of their race, gender, age or alleged disability.

     In 1978, the Supreme Court held that a municipality could be subject to liability under

§1983 for the execution of municipal policies or customs created either by the municipality's

lawmakers or by "those who edicts or acts may fairly be said to represent official policy . . ."

Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978).

At the same time, however, the Supreme Court held that "a local government may not be sued

under §1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at

694. Thus, the Second Circuit has held that in order to hold a municipality liable under 42

U.S.C. §1983, "a plaintiff is required to plead and prove three elements: (1) an official policy

or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."

Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted); Batista v.

Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). As a result, where a plaintiff fails to present the

Court with any evidence of an official policy, summary judgment is appropriate. Sagendorf-

Teal v. County of Rensselaer, 100 F.3d 270, 277 (2d Cir. 1996) (summary judgment granted

in favor of defendant county based upon plaintiff's failure to produce any evidence of a

county policy or custom).

The Amended Complaint is devoid of any allegations that either the State Board or the reconstituted Hartford Board of Education acted pursuant to an official policy or custom. In the absence of such an allegation, Plaintiff's claims against such Defendants must fail. <u>See</u> <u>e.g.</u>, <u>Batista</u>, 702 F.2d at 397-98.

Additionally, however, the record fails to reveal: (1) any policy, custom or practice of the either the State Board or the reconstituted Hartford Board of Education to unlawfully discriminate or retaliate against any group of teachers; or (2) any causal link between an official policy or custom of the State Board or the reconstituted Hartford Board of Education and Plaintiff's termination. <u>See</u>, <u>Batista</u>, 702 F.2d at 397. The record reveals that the State Board, during the relevant time, and the reconstituted Hartford Board of Education, since December 3, 2002 have maintained official policies against illegal discrimination, retaliation or harassment. Affidavit of Webster Brooks & Exhibit 1 thereto. Moreover, in her deposition, Plaintiff could only offer opinion, conjecture and rank speculation to support any claim of a municipal policy, custom or practice to illegally discriminate against employees. <u>See</u>, Myers II Tr. at 61-68 & Exhibit 8 thereto (at Interrogatory 10); Myers I Tr. at 76-78. Thus, Plaintiff has not brought forth any evidence to suggest a municipal pattern, practice or custom of illegal discrimination on the basis of race, gender, age or disability.

Municipal liability may be imposed under section 1983 for a single event or single decision by a municipal policymaker but only where the municipality itself is at fault. DeLeon v. Little, 981 F. Supp. 728, 740 (D. Conn. 1998). More particularly, a municipality may only be held liable for a single act when the decision to take the action was made by a decision maker "whose acts or edicts may fairly be said to represent municipal policy." Monell, 436 U.S. at 694. Thus, municipal liability may attach where the municipal decision maker possesses final policy making authority with respect to the action ordered. DeLeon, 981 F. Supp. at 740. Moreover, "[t]he determination of whether individual actors hold policymaking authority is a question of law for the judge to decide." Soto v. Schembri, 960 F. Supp. 751, 757 n.4 (S.D.N.Y. 1997) (citing, inter alia, Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

In this case, the ultimate decision to terminate Plaintiff's employment was made by the State Board, which had the authority to make policy for the Hartford schools. See, Special Act 97-4.[14] In this case, the State Board's decision was made based on the report that was received from Mr. Irvings. However, once again, Plaintiff has not presented any admissible evidence to suggest that the State Board's decision was motivated by any illegal animus. The

---

[14] Because the State Board made the decision to terminate Plaintiff's employment on November 6, 2002 and the reconstituted Hartford Board of Education did not exist at that time, the reconstituted Hartford Board of Education was not a final policymaker at that time.

record shows that the State Board members relied on the advice of counsel in interpreting the

requirements of §10-151 and, thus, in terminating Plaintiff's employment. Therefore,

Plaintiff has failed to establish a municipal custom, policy or practice of illegal discrimination

by either of the institutional defendants and, therefore, summary judgment should enter in

favor of the State Board and the Hartford Board of Education on all counts in the complaint.


III.    CONCLUSION

      For the foregoing reasons, summary judgment should be granted in favor of

Defendants on all counts of the Complaint.

DEFENDANTS EDNA NEGRON, D. ANWAR
AL-GHANI, JIM BOUCHER, FELIX
KARSKY, ANTHONY AMATO, ANN BIRD,
STATE BOARD OF TRUSTEES FOR THE
CITY OF HARTFORD AND THE HARTFORD
BOARD OF EDUCATION

By _____

    Joseph W. McQuade, ct 12121
    Diana Garfield, ct05551
    Kainen, Escalera & McHale, P.C.
    21 Oak Street
    Hartford, CT  06106
    Telephone (860) 493-0870
    Facsimile (860) 493-0871
    jmcquade@kemlaw.com
    dgarfield@kemlaw.com
    Their Attorneys

40

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Support of

Motion for Summary Judgment was sent via first class U.S. mail on this the 28th day of May,

2004 to:

      Christine E. Corriveau, Esq.
      Francis A. Miniter, Esq.
      Miniter & Associates
      147 Charter Oak Avenue
      Hartford, CT  06106

                                      _____
                                        Joseph W. McQuade

13840