UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BEVERLY MYERS | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03CV652 (PCD) |
| v. | : | |
| | : | |
| CITY OF HARTFORD, ET AL | : | |
| | : | |
| Defendants. | : | MAY 28, 2004 |

### RULE 56(a)(1) STATEMENT OF UNDISPUTED FACTS

The following facts, annotated to the record, are not in dispute:

1.      Plaintiff, Beverly Myers, was a teacher with the Hartford Public School system starting in about 1974 and in 1980 she became a full-time teacher. At the time of her termination, she had achieved tenure under Connecticut law. Transcript of the February 19, 2004 Deposition of Beverly Myers ("Myers I Tr."), relevant portions of which are attached hereto as Exhibit A, at 35-36.

2.      There is no such person or entity known as the "State Board of Trustees for the City of Hartford." See e.g., Affidavit of Ann Bird ("Bird Aff't."), attached hereto as Exhibit H, at ¶35.

3.      Anthony Amato was the Superintendent of Schools in Hartford from April of 1999 to approximately late October of 2002. He is now the Superintendent of Schools in New Orleans, Louisiana. Amended Complaint at ¶7; Transcript of the March 10, 2004 Deposition of

Beverly Myers ("Myers II Tr."), relevant portions of which are attached hereto as Exhibit B, at 22; Affidavit of Anthony Amato ("Amato Aff't.), attached hereto as Exhibit I, at ¶¶2-3.

4.  Ann Bird is an Assistant Corporation Counsel for the City of Hartford. Attorney Bird represented the Superintendent in the hearings to terminate plaintiff's employment. Amended Complaint at ¶6; Myers II Tr. at 24; Bird Aff't. at ¶2, 8.

5.  In 1997, the Connecticut Legislature passed Special Act 97-4 which, inter alia, dissolved the Hartford Board of Education effective June 1, 1997 and legislated that "[t]he State Board of Trustees for the Hartford Public Schools . . . shall be solely responsible for the management of the Hartford School District." Special Act 97-4(2); see also, Special Act 97-4(4)(a)(1), attached hereto as Exhibit F.

6.  The State Board of Trustees for the Hartford Public Schools ("State Board") managed the Hartford School District through December 2, 2002. See, Special Act 01-7(2)(B), attached hereto as Exhibit G; see also, Affidavit of Judith Fagan ("Fagan Aff't."), attached hereto as Exhibit J, at ¶4 (the reconstituted Hartford Board of Education commenced its duties on December 3, 2002).

7.  Edna Negron was a member of the State Board during the relevant time. Amended Complaint at ¶4; Myers II Tr. at 17; Affidavit of Edna Negron ("Negron Aff't.), attached hereto as Exhibit K, at ¶2.

8. James Boucher was a member of the State Board during the relevant time. Amended Complaint at ¶4; Affidavit of James Boucher, attached hereto as Exhibit L, at ¶2.

9. Felix Karsky was a member of the State Board during the relevant time. Amended Complaint at ¶4; Affidavit of Felix Karsky, attached hereto as Exhibit M, at ¶2.

10. Anwar Al-Ghani was a member of the State Board during the relevant time. Amended Complaint at ¶4; Myers II Tr. at 20; Affidavit of Anwar Al-Ghani ("Al-Ghani Aff't."), attached hereto as Exhibit N, at ¶2.

11. Plaintiff has two lawsuits pending: one involving alleged discrimination while she was employed as a teacher; and one involving the termination of her employment. Myers I Tr. at 10-11; Myers II Tr. at 30-32.

12. Effective September 4, 2001, Plaintiff was put on administrative leave from her teaching position. Myers I Tr. at 73; Bird Aff't. at 4 & Exhibit 1 thereto; Amato Aff't. at ¶8 & Exhibits 2 & 3 thereto.

13. In a letter dated November 20, 2001, Superintendent Amato notified plaintiff that termination of her employment was under consideration. Myers II Tr. at 33 & Exhibit 3 thereto; Bird Aff't. at ¶5 Exhibit 2 thereto; Amato Aff't. at ¶7 & Exhibit 1 thereto.

14. On or about November 26, 2001, Plaintiff requested a listing of the reasons for the proposed termination. Bird Aff't. at ¶6 & Exhibit 3 thereto; Amato Aff't. at ¶9 & Exhibit 4 thereto.

15. On November 30, 2001, Superintendent Amato provided plaintiff with a listing for her proposed termination. Myers II Tr. at 33-34 & Exhibit 4 thereto; Bird Aff't. at ¶7 & Exhibit 4 thereto; Amato Aff't. at ¶10 & Exhibit 5 thereto.

16. On December 4, 2001, Plaintiff requested a hearing on the proposed termination. Bird Aff't. at ¶9 & Exhibit 5 thereto; Amato Aff't. at ¶11 & Exhibit 6 thereto.

17. On December 11, 2001, Ann Bird wrote to Francis Miniter, Plaintiff's counsel, informing him of the Superintendent's selection of a panel member. Bird Aff't. at ¶10 & Exhibit 6 thereto.

18. Plaintiff did not designate a panel member within the statutory period and a panel could not be assembled. Bird Aff't. at ¶11.

19. Due to Plaintiff's failure to timely designate a panel member, Superintendent Amato's November 20, 2001 notice was withdrawn. Bird Aff't. at ¶12 & Exhibit 7 thereto.

20. Superintendent Amato recommenced termination proceedings against Plaintiff via a February 8, 2002 letter that included a listing of the reasons for Plaintiff's proposed termination. Bird Aff't. at ¶13 & Exhibit 8 thereto; Amato Aff't. at ¶12 & Exhibit 7 thereto.

21. In a February 13, 2002 letter, Plaintiff elected a hearing before a three member impartial hearing panel. Bird Aff't. at ¶13 & Exhibit 9 thereto; Plaintiff's Responses to Defendants' Requests for Admission ("Requests to Admit"), attached hereto as Exhibit E at Request 1; Myers II Tr. at 34; Amato Aff't. at ¶13 & Exhibit 8 thereto.

22. On February 25, 2002, Superintendent Amato designated John Romanow as his panel member. Bird Aff't. at ¶14 & Exhibit 10 thereto Requests to Admit at 4.

23. On February 26, 2002, Plaintiff designated Nukilwa Taquilaya as her panel member. Bird Aff't. at ¶16 & Exhibit 11 thereto; Requests to Admit at 2.

24. Ann Bird advised Plaintiff's counsel to have Mr. Taquilaya call Mr. Romanow in order to select the third (i.e., neutral) panel member and supplied the names of four acceptable neutral arbitrators. Bird Aff't. at ¶17.

25. When Plaintiff failed to supply any names of acceptable neutral arbitrators, Ann Bird wrote to Plaintiff's counsel in an effort to reach agreement on an arbitrator within the statutory time period. Bird Aff't. at ¶18 & Exhibit 12 thereto.

26. In the absence of a response from Plaintiff on a neutral arbitrator Ann Bird wrote to the American Arbitration Association ("AAA") and requested that AAA select the neutral arbitrator. Bird Aff't. at ¶18 & Exhibit 12 thereto.

27. The AAA selected Mark Irvings as the neutral arbitrator. Requests to Admit at 5; January 8, 2004 Deposition of Mark Irvings ("Irvings Tr."), relevant portions of which are attached hereto as Exhibit C, at 10-11; Myers II Tr. at 35, 38-39.

28. The neutral arbitrator served as the chairman of the arbitration panel. Irvings Tr. at 11; January 20, 2004 Deposition of Nukilwa Taquilaya ("Taquilaya Tr."), relevant portions of which are attached hereto as Exhibit D, at 21.

29. Plaintiff was responsible to pay the fees of her representative and ½ of the neutral arbitrator's fees. Conn. Gen. Stat. §10-151(d); Requests to Admit 3 & 6; Irvings Tr. at 12-13; Taquilaya Tr. at 21; Myers II Tr. at 39.

30. As of the time of his deposition in 2004, Mr. Taquilaya had not submitted a bill to Plaintiff for his fees as an arbitrator because he felt that she was not yet in a position to pay. Taquilaya Tr. at 12, 16-18; Myers II Tr. at 36.

31. Prior to being asked to serve as an arbitrator, Mr. Taquilaya had a personal friendship, as well as a professional relationship, with Plaintiff. Taquilaya Tr. at 13; Myers II Tr. at 35-36.

32. Mr. Taquilaya had never served on a panel in a §10-151 teacher termination proceeding prior to Plaintiff's case. Taquilaya Tr. at 14.

33. At some point in the future, when Plaintiff is in a position to pay, Mr. Taquilaya plans to submit a bill to Plaintiff for his services. Taquilaya Tr. at 19.

34. Plaintiff could have had the union provide her with legal representation, which would have cost her nothing, at the Section 10-151 hearing, but instead chose to retain private counsel. Myers II Tr. at Exhibit 8 (at Interrogatory 7).

35. During the initial pre-hearing conference, Mr. Irvings stated to counsel that he would estimate his fees and both sides would be required to prepay their share. Requests to Admit at 7; see also, Irvings Tr. at 14-19; Bird Aff't. at ¶20.

36.     Based on the parties' projections of the number of days necessary to conduct the hearing, Mr. Irvings submitted a bill to all counsel for the initial hearing dates. Requests to Admit at 8; Irvings Tr. at 14-15.

37.     Plaintiff, through counsel, requested that she be allowed to pay her share of the costs in installment payments. Requests to Admit at 9; Irvings Tr. at 14-15.

38.     Mr. Irvings agreed to an installment payment plan for Plaintiff that resulted in full payment of the estimated bill for each hearing date prior to the commencement of the hearings on that particular day. In other words, during the first round of hearings, Mr. Irvings was never in a creditor status vis-à-vis Plaintiff. Requests to Admit at 10; Irvings Tr. at 14-19, 52-54; Myers II Tr. at 40-43 & Exhibit 5 thereto.

39.     Plaintiff started making payments on or about April 12, 2002 and completed the payments by May 24, 2002. At no time was she in a debtor status to Mr. Irvings through the July 15, 2002 hearing. Myers II Tr. at 40-43 & Exhibit 5 thereto.

40.     Hearings were held on May 13 and 14, June 10, 24 and 26 and July 15, 2002. Requests to Admit at 11.

41.     Because the proceeding was still not completed after six sessions, five more dates were chosen, beginning September 13, 2002. Myers II Tr. at 41-42; Irvings Tr. at 20-21 & Exhibit 9 thereto; see also, Requests to Admit at 12 ("additional dates were tentatively reserved if needed, and not yet determined.").

42.     During the pre-hearing conference, Mr. Irvings informed counsel that he would communicate with them via e-mail and no party objected. Thereafter, Mr. Irvings communicated with counsel via e-mail with no objection. Irvings Tr. at 17-18; Bird Aff't. at ¶22.

43.     On August 7, 2002, Mr. Irvings, as he had done for the initial round of hearings, e-mailed his estimated bill to all counsel for the hearings to begin in September. Requests to Admit at 13-14 & Exhibit 1 thereto; Irvings Tr. at 21-24 & Exhibit 3 thereto; Bird Aff't. at ¶24 & Exhibit 13 thereto.

44.     Mr. Irvings did not receive any notification that the August 7, 2002 e-mail message had not been delivered to Attorney Miniter, even though Mr. Irvings' computer normally notifies him if a message is not delivered. Irvings Tr. at 22. Additionally, Mr. Miniter never claimed that he had not received this e-mail. Irvings Tr. at 40-41.

45.     By September 4, 2002, neither Plaintiff nor her counsel had made any payment of Mr. Irvings' anticipated fees for the second round of hearings nor had they communicated with Mr. Irvings regarding payment of his fees. Requests to Admit at 22-23.

46.     On September 4, 2002, Mr. Irvings revised his estimated bill and again advised the parties that prepayment must be made promptly. Requests to Admit at 19-21 & Exhibit 2 thereto; Irvings Tr. at 24-26 & Exhibit 4 thereto; Bird Aff't. at ¶25 & Exhibit 14 thereto.

47.	Mr. Irvings received payment from the Superintendent but received no response from Mr. Miniter's office. Irvings Tr. at 26.

48.	On September 11, 2002, Attorney Miniter requested a continuance of the September 13, 2002 hearing. Requests to Admit at 25-26 & Exhibit 3 thereto; Irvings Tr. at 26-27 & Exhibit 5 thereto; Bird Aff't. at ¶26 & Exhibit 15 thereto.

49.	Mr. Irvings replied to Attorney Miniter's request for a postponement by advising Attorney Miniter and Attorney Bird that he would consider postponement of the hearing date if Attorney Miniter or Plaintiff agreed "to be responsible for the entire cost of the late postponement. If not the hearing will go forward as scheduled . . . ." Requests to Admit at 27 & Exhibit 4 thereto; Irvings Tr. at 28 & Exhibit 6 thereto; Bird Aff't. at ¶27 & Exhibit 16 thereto.

50.	Attorney Bird objected to such request for a continuance. Requests to Admit at 28 & Exhibit 5 thereto; Irvings Tr. at 28-29 & Exhibit 7 thereto; Bird Aff't. at ¶28 & Exhibit 17 thereto.

51.	Mr. Irvings telephoned plaintiff's counsel's law firm and spoke to a lawyer in Mr. Miniter's firm on the day before the hearings were to commence to again advise that payment was due. Mr. Irvings advised the lawyer that Plaintiff would need to come to the hearing the following day with payment or else the panel could not proceed. Irvings Tr. at 30-31, 42 & Exhibit 9 thereto.

52.     Prior to September 13, 2002, Plaintiff had not paid any of the neutral arbitrator's fees for the second round of hearings. Myers II Tr. at 51; Irvings Tr. at 31-32.

53.     Prior to the September 13, 2002, Mr. Taquilaya had no knowledge regarding any communications between counsel and Mr. Irvings regarding Mr. Irvings' fees. Taquilaya Tr. at 23-24.

54.     On September 13, 2002, Mr. Irvings spoke to the other members of the arbitration panel and explained the issue regarding Plaintiff's failure to pay prior to the hearing date. The arbitration panel met with Mr. Miniter and Ms. Bird and Mr. Irvings raised several suggestions to allow the hearings to continue. Irvings Tr. at 32-33; see also, Requests to Admit at 31.

55.     Mr. Irvings proposed that Plaintiff pay the fees for the September 13th hearing so it could go forward and the remainder of the fees in installments. Alternately, he proposed that Plaintiff's counsel pay for the fees for the September 13, 2002 hearings. Irvings Tr. at 34-35; see also, Requests to Admit at 34 & 36.

56.     Plaintiff rejected both proposals, offering instead to begin paying installments on the fees in a few weeks. Irvings Tr. at 34-35; see also, Requests to Admit at 33, 35, 37; Myers II Tr. at 54.

57.     In Mr. Irvings' view, prepayment of the neutral arbitrator's fees "insures the integrity of the process. The concern is that the neutral not be placed in creditor status to the

parties. The concern is that if—that there would be a perception that you might somehow be influenced in your decision-making based upon your concern of ultimately collecting the fee." Irvings Tr. at 16-17, 35-36; see also, Irvings Tr. at Exhibit 9.

58. Because the payment issue could not be resolved, the panel went on the record and concluded that the hearings could not go forward. Irvings Tr. at 35-37 & Exhibit 8 thereto; see also, Taquilaya Tr. at 28-30.

59. Since no agreement could be reached on payment of fees to the neutral arbitrator, the panel resigned from the proceeding. Irvings Tr. at Exhibit 8; see also, Requests to Admit at 39 & Exhibit 6 thereto, Taquilaya Tr. at 41.

60. Mr. Irvings wrote a letter to Thomas Ritter, Chairman of the State Board of Trustees for the Hartford Public Schools ("State Board") explaining that the arbitration panel had dissolved itself and the reasons therefore. Irvings Tr. at 38-39 & Exhibit 9 thereto.

61. According to Mr. Irvings, the conduct of Ms. Bird did not cause the panel to resign. Irvings Tr. at 52-53.

62. Ann Bird believed that Plaintiff had received all of the process that she was due under Connecticut General Statutes §10-151. Bird Aff't. at ¶31.

63. Ann Bird informed Robert Henry, the new Superintendent of Schools, of her belief and drafted a resolution for his consideration and possible submission to the State Board. Bird Aff't. at ¶32 & Exhibit 18 thereto.

64. Ann Bird did not represent the State Board with respect to this matter. Bird Aff't. at ¶29.

65. The State Board considered plaintiff's employment status at the regular State Board meeting on November 6, 2002. <u>See</u>, Minutes of the November 6, 2002 Meeting of the State Board, attached as Exhibit 2 to the Affidavit of Webster Brooks ("Brooks Aff't."), attached hereto as Exhibit I.

66. Ann Bird did not address the State Board at its meeting on November 6, 2002. Bird Aff't. at ¶33.

67. Anthony Amato did not attend the November 6, 2002 and could not have addressed the State Board at that time. Amato Aff't. at ¶15.

68. Anthony Amato did not submit a resolution or motion regarding Plaintiff or her employment for consideration by the State Board at its November 6, 2002 meeting. Amato Aff't. at ¶15.

69. Superintendent of Schools Robert Henry recommended to the State Board of Trustees that plaintiff's employment be terminated. <u>See</u>, Exhibit 1 to the Negron, Al-Ghani, Boucher and Karsky Affidavits.

70. Neither Negron, Al-Ghani, Boucher nor Karsky was a lawyer and none had previously faced a similar situation as a Board member. Negron Aff't. at ¶¶3, 7; Al-Ghani Aff't. at ¶¶3, 7; Boucher Aff't. at ¶¶3, 7; Karsky Aff't. at ¶¶3, 7.

71.     On November 6, 2002, the State Board accepted the recommendation to terminate plaintiff's employment. Minutes of the November 6, 2002 meeting of the State Board at p. 6, Item 31, attached as Exhibit 2 to the Brooks Aff't. (Exhibit I).

72.     In reaching this conclusion, the State Board members who voted on this matter (Edna Negron, Anwar Al-Ghani, James Boucher and Felix Karsky) relied on the advice of the Board's outside counsel, Thomas Mooney of Shipman & Goodwin, an expert on Connecticut school law. Negron Aff't. at ¶¶8-9; Al-Ghani Aff't. at ¶¶8-9; Boucher Aff't. at ¶¶8-9; Karsky Aff't. at ¶¶8-9 and attached opinion letter; see also, Bird Aff't. at ¶30.

73.     From the time of her suspension on September 4, 2001 until her termination on or about November 6, 2002, Plaintiff received her full salary. Bird Aff't. at ¶34.

74.     Plaintiff knows of no conduct of Edna Negron that was adverse to Plaintiff except for her acceptance of the recommendation to terminate plaintiff's employment at the November 6, 2002 meeting of the State Board of Trustees. Myers II Tr. at 20.

75.     Plaintiff knows of no conduct of Jim Boucher that was adverse to her except for his acceptance of the recommendation to terminate her employment at the November 6, 2002 meeting of the State Board of Trustees. Myers II Tr. at 20-21.

76.     Plaintiff knows of no conduct of Anwar Al-Ghani that was adverse to her except for his acceptance of the recommendation to terminate her employment at the November 6, 2002 meeting of the State Board of Trustees. Myers II Tr. at 20.

77.     Plaintiff knows of no conduct of Felix Karsky that was adverse to her except for his acceptance of the recommendation to terminate her employment at the November 6, 2002 meeting of the State Board of Trustees. Myers II Tr. at 21-22.

78.     Plaintiff has sued Anthony Amato because he was the superintendent and had "the last say so." Myers II Tr. at 22-24.

79.     Plaintiff is suing Ann Bird because Ms. Bird: allegedly made false representations to the State Board that Plaintiff had waived her right to a hearing; made true disclosures to the arbitration panel as to when Plaintiff would be paid and the amount of her paychecks; and, at the arbitration hearing, allegedly made prejudicial, inaccurate and incomplete presentations of evidence. Myers II Tr. at 25-28 & Exhibit 8 thereto (at Interrogatory 14).

80.     Plaintiff's other lawsuit alleging discrimination during her employment and suspension was filed in July 2002. Complaint, Myers I; see also, Myers II Tr. at 60-61.

81.     Plaintiff was never denied a promotion or demoted during her employment in the HPS. Myers II Tr. at 62-64.

82.     It is plaintiff's "opinion" that black female employees of the HPS were "targeted" for adverse action. Myers II Tr. at 61-62.

83. Plaintiff has no particularized knowledge about other "targeted" employees and "assumes" they were discriminated against. Myers II Tr. at 64-68 & Exhibit 8 thereto at Interrogatory 10; Myers I Tr. at 76-78.

84. There were three separate investigations about plaintiff's conduct in her job during 2001. Myers I Tr. at 73.

85. Plaintiff agrees that the charges against her in 2001 were serious enough that the principal had to refer them for investigations. Myers I Tr. at 123-127; see also, Amato Aff't. at Exhibits 2 & 3 thereto.

86. The current Hartford Board of Education (or the "reconstituted Hartford Board of Education") became an entity effective December 3, 2002. Special Act 01-7 §§1(b)-(c), 2(b); Fagan Aff't. at ¶4.

87. The reconstituted Hartford Board of Education has not taken any action concerning Plaintiff's employment or former employment in the Hartford Public Schools. Fagan Aff't. (Exhibit J) at ¶¶3-5.

88. The State Board, at all relevant times, and the reconstituted Hartford Board of Education, from December 3, 2002 to the present, have maintained policies prohibiting illegal discrimination, retaliation and harassment. Brooks Aff't. at ¶¶5-6 & Exhibit 1 thereto.

DEFENDANTS EDNA NEGRON, D. ANWAR AL-GHANI, JIM BOUCHER, FELIX KARSKY, ANTHONY AMATO, ANN BIRD, STATE BOARD OF TRUSTEES FOR THE CITY OF HARTFORD AND THE HARTFORD BOARD OF EDUCATION

By /s/ Joseph W. McQuade
Joseph W. McQuade, ct 12121
Diana Garfield, ct05551
Kainen, Escalera & McHale, P.C.
21 Oak Street
Hartford, CT 06106
Telephone (860) 493-0870
Facsimile (860) 493-0871
jmcquade@kemlaw.com
dgarfield@kemlaw.com
Their Attorneys

16

## CERTIFICATION OF SE][RVICE

This is to certify that a copy of the foregoing Rule 56(a)(1) Statement of Undisputed Facts was sent via first class U.S. mail on this the 28th day of May, 2004 to:

Francis A. Miniter, Esq.
Christine E. Corriveau, Esq.
Miniter & Associates
100 Wells Street, Suite 1D
Hartford, CT  06103

_____
Joseph W. McQuade

13728