UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BEVERLY MYERS | : | CIVIL ACTION NO: |
| | : | 303CV0652PCD |
| V. | : | |
| | : | |
| THE CITY OF HARTFORD, ET AL | : | July 30, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. FACTS:

The Plaintiff is an individual citizen resident in the Town of Bloomfield, County of Hartford, and State of Connecticut. (Affidavit of Beverly Myers ¶1) Defendants Edna Negron, D. Anwar Al-Ghani, Jim Boucher, and Felix Karsky are all members of the State Board of Education for the City of Hartford who were present at and took part in the action described herein. (Affidavit of Beverly Myers ¶2)

Defendant State Board of Trustees was the agent of the City of Hartford for all matters pertaining to education and was solely responsible for the management of the Hartford School District during the relevant time periods.(Affidavit of Beverly Myers ¶4)

Defendant Ann Bird was at all relevant times the Associate Corporation Counsel for the City Of Hartford assigned to the Board of Education and also served as counsel at meetings of the State Board of Education.(Affidavit of Beverly Myers ¶4)

Defendant Anthony Amato was at all relevant times until, on information and belief,

November 1, 2002 , the Superintendent of Schools for the City of Hartford. (Affidavit of Beverly Myers ¶5) Defendant Hartford Board of Education is the Successor in interest to the State Board of Trustees.(Affidavit of Beverly Myers ¶6)

From 1978 until terminated as described herein on November 6, 2002, Plaintiff Beverly Myers was employed as a teacher by the City of Hartford, through the Board of Education (latterly the State Board of Trustees for the City of Hartford). (Affidavit of Beverly Myers ¶7) Ms. Myers is a black female aged fifty seven at the time of her termination. Ms. Myers alleges that her termination was based on her age, race, gender and disability and initiated a discrimination lawsuit in July, 2002, entitled Beverly Myers v. John Laverty and City of Hartford, Hartford Public Schools, bearing the Civil Action No. 3:02CV1152 (AWT). (Affidavit of Beverly Myers ¶8) Also at that time she was a tenured teacher in the Hartford Public School system.(Affidavit of Beverly Myers ¶8)

In or about early September, 2001, the City of Hartford and the State Board Trustees informed Ms. Myers in writing of their intent to terminate her pursuant to the provisions of Connecticut General Statute ("C.G.S.") §10-151b(b), which provides in relevant part for a trial of the termination request before either a single arbitrator selected by the Board of Education, or by a three member panel, with one arbitrator selected by the teacher, one selected by the Board of Education, and a third person selected neutrally. (Affidavit of Beverly Myers ¶9) Ms. Myers elected a three member panel, and appointed Nukilwa Taquilaya. (Affidavit of Beverly Myers ¶10, Affidavit of Nukilwa Taqualaya ¶4) The City of Hartford appointed John W. Romanow. (Affidavit of Beverly Myers ¶10, Affidavit of Taqualaya¶4) Mark L. Irvings was neutrally chosen and was the Chairperson of the panel. (Affidavit of Beverly Myers ¶10, Affidavit of Taqualaya¶4)

The panel first convened on or about May 13, 2002. (Affidavit of Beverly Myers ¶11

Affidavit of Taqualaya¶5) Prior to that date, the anticipated fees of Mr. Irvings, the neutral panel member and Chairperson, were addressed in writing and a fee schedule agreed upon between Plaintiff and Mr. Irvings. (Affidavit of Beverly Myers ¶11) As later stated by Mr. Irvings, Ms. Myers kept to that payment plan "religiously" and that he had no problem with her performance of the arrangement. (Affidavit of Beverly Myers ¶11, Affidavit of Taqualaya¶8)

Hearings were held on May 13 and 14, June 10, 24 and 26, July 15 and September 13, all in the year 2002. (Affidavit of Beverly Myers ¶12) During such hearings, The State Board of Trustees presented evidence that was incomplete, inaccurate and in some cases shown to be perjured. (Affidavit of Beverly Myers ¶13) For Example, the following issues were addressed at the hearings: a) Tardiness issue was dropped because proven inaccurate because of statistics, known to John Laverty, who perjured himself over the tardiness issue and then recanted on the stand stating that he knew which teachers were regularly more tardy; b) Performance evaluation issues regarding incompetency were dropped because proven not only untrue but deliberately forced into a very short period of time directly following Plaintiff's return from medical leave; c) Witness Kathy Murphy said that the Plaintiff's students were in the hallway without supervision on May 2nd at 4th Period, and that it could only have been at that date and time, but Plaintiff proved that her class was being evaluated at that very time on that day by John Laverty with her students all present in her classroom; d) Rhonda Niles testified that she didn't speak to the Plaintiff all year but there was proof that she had spoken to the Plaintiff after Plaintiff sent her a gift after her mother had died; e) Laverty testified that Dorothy Carrigan had a problem working with Plaintiff but Carrigan testified that she had no problem working with the Plaintiff but that she wanted to chair the social studies program and the Plaintiff intimidated her because she knew more about social studies; f) Laverty testified that he did not know

about the petition that students circulated regarding the Plaintiff until the Thursday morning after Plaintiff returned from medical leave, but Miss Marisol, a paraprofessional, testified that she had spoken to Laverty about it at about 2:30 or 3:00 pm, on the Friday before Plaintiff returned to school and before Laverty left for Boston (Affidavit of Beverly Myers ¶13(a)-(f))

The Board of Education was compelled by the Panel to drop one of its charges during the cross-examination of its first witness. (Affidavit of Beverly Myers ¶14) On July 15, the panel unanimously required the Superintendent to withdraw the main charge against the Plaintiff, namely that she should be dismissed based on a negative evaluation of her in May of 2001. (Affidavit of Taqualaya ¶16.) At the time of the hearing on September 13, 2002, the Board had presented about nine (9) witnesses and had failed to prove anything against Ms. Myers. (Affidavit of Beverly Myers ¶14, Affidavit if Taquilaya ¶6) Defendants' allegations against Ms. Myers were pretext and the real reasons for her termination were based on her race, age, gender and disability.(Affidavit of Beverly Myers ¶14)

Shortly before the hearing on September 13, 2002, Mr. Irvings wrote to counsel for the parties about payment arrangements for hearings not yet held and indicated that he wanted to be paid in advance on the basis of the estimated number of future hearing days (even though not all of those hearing dates might be used). (Affidavit of Beverly Myers ¶15) Ms. Myers had every reason to believe that continued payment of instalments would be acceptable as that agreement had already been made. (Affidavit of Beverly Myers ¶15) Irvings unilateral and unwarranted change in the manner of performance caused a problem.

Just as the hearing on September 13, 2002 was about to commence, Mr. Irvings took counsel for Ms. Myers aside and demanded payment in full at that time from Ms. Myers for hearings which

had not yet occurred and did so in the presence of counsel for the Board. (Affidavit of Beverly Myers ¶16, Affidavit of Taquilaya ¶8, 10) Said demand constituted a breach of contract and a breach of ethics. As the discussion continued, the neutral panel member allowed Mr. Stacey to attend this discussion, but not Ms. Myers. (Affidavit of Beverly Myers ¶16)

Defendant Ann Bird disclosed to Mr. Irvings, panel members and other individuals present the nature, amount, and manner of payment of Ms. Myers' most recent paycheck and the same information about the next expected paycheck. (Affidavit of Beverly Myers ¶17) She did so in the presence of the other two panel members. (Affidavit of Beverly Myers ¶12, Affidavit of Taquilaya ¶11) She later published this information by repeating it on the record of the hearing that day. (Affidavit of Beverly Myers ¶17) In so doing, Defendant Ann Bird further contributed to the breach of ethics which had occurred and prejudiced Ms. Myers position with Mr. Irvings.(Affidavit of Beverly Myers ¶18)

As a result of the events described in the preceding paragraphs, and considering the conflict interest arising from the breach of contract and breach of ethics, the panel members met privately and decided that they could no longer judge the case before them and should resign. (Affidavit of Beverly Myers ¶119, Affidavit of Taquilaya ¶13) The panel met on the record with the parties (a copy of the transcript is attached to the original complaint) and officially resigned. (Affidavit of Beverly Myers ¶19) The Plaintiff had not had the opportunity to present any evidence, as the hearings ended before Ms. Myers had a chance to begin her case. (Affidavit of Beverly Myers ¶19)

Thereafter, Ms. Myers called upon the Defendants to restore her to her position or continue the process. (Affidavit of Beverly Myers ¶20) Without permitting Plaintiff to exhaust her administrative remedies, without permitting due process of law, and instead of continuing the hearing

process with a new panel which would have the benefit of the transcripts of testimony from the previous hearing days, the Defendants Amato, Bird and Stacey wrongfully, maliciously and deceptively placed a motion before the State Board of Trustees, falsely claiming that Ms. Myers had waived her right to a hearing under C.G.S. §10-151b(b).(Affidavit of Beverly Myers ¶21, Affidavit of Taquilaya ¶14)

The State Board of Trustees met on November 6, 2002, and Item 31 of the Agenda was the termination of Ms. Myers for alleged waiver of right to hearing. (Affidavit of Beverly Myers ¶22) Marilda Gandara was absent from the said meeting of the Board (Affidavit of Beverly Myers ¶22) and Chairman Tom Ritter recused himself. (Affidavit of Beverly Myers ¶23) Counsel for Ms. Myers and Mr. Nukilwa Taquilaya, the panel member appointed by Ms. Myers, addressed the Board to inform them that the representation of a waiver made to them was false and deceptive. (Affidavit of Beverly Myers ¶22, Affidavit of Nukilwa Taquilaya ¶18.) No presentation of evidence was permitted. (Affidavit of Beverly Myers ¶22, Affidavit of Nukilwa Taquilaya ¶20.) The Board voted to pass over Item 31.(Affidavit of Beverly Myers ¶24, Affidavit of Nukilwa Taquilaya ¶20.) The hearing adjourned without further action of the Board on Item 31 of its Agenda. (Affidavit of Beverly Myers ¶25, Affidavit of Nukilwa Taquilaya ¶20.)

On or about November 11, 2002, Ms. Myers received a letter informing her that the Board had terminated her. (Affidavit of Beverly Myers ¶26) Upon further inquiry, Ms. Myers gained information upon which she has formed a belief that following the adjournment of the Public Hearing of November 6, 2002, the Board illegally met in secret and voted to terminate Ms. Myers without a public record or debate before the public. (Affidavit of Beverly Myers ¶26) No other teachers have been terminated without completing a full pre-termination hearing. (Affidavit of Beverly Myers ¶27)

On or about July 2, 2002, Ms. Myers brought an action in the U. S. District Court for the District of Connecticut against Defendants Board, City of Hartford, Amato, and other persons, alleging violations of her civil rights under 42 U.S.C. §1983 and for related causes of action.(Affidavit of Beverly Myers ¶28)

**II. ARGUMENT:**

**A. SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the granting of a summary judgment motion if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of summary judgment is to determine whether a trial will be necessary. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247-48 (1986). However, "[t]he [Plaintiff's] burden of establishing a prima facie case... is not onerous" Fisher v. Vassar College, 114 F.3d. 1332 (2d. Cir. 1997) citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). In fact, Plaintiff's burden of establishing a prima facie case of discrimination has frequently been described as "minimal." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). In order to maintain an action under §1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Romer v. Morgenthau, 119 F. Supp.2d 346, 363 (S.D.N.Y. 2000) (citation omitted).

## B. PLAINTIFF HAS A VIABLE 42 U.S.C. §1983 CLAIM

### 1. THERE WAS A DUE PROCESS VIOLATION.

The Plaintiff has a classic procedural due process claim. As the Defendants concede, the Plaintiff was a tenured teacher and as such, she had a property interest in her employment. (Defendant's brief p. 8.) As the Defendants point out, under federal law, "[a]n employee who has a property interest in his employment 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' before he is subjected to the loss of employment." Munafo v. Metropolitan Trans. Auth. 285 F.3d 202, 212 (2d Cir. 2002).

In the present case, the Plaintiff is not contesting that she received a copy of the charges against her, nor is she contesting that she had a general explanation of the employer's evidence. However, in no way did the Plaintiff receive an opportunity to present her side of the story before she was subjected to a loss of employment. In the eight days of hearings, the School system had presented about nine (9) witnesses and they had not rested their case. Ms. Myers never had an opportunity to testify, nor was she allowed to present any of her own witnesses. Moreover, the Board presented evidence that was incomplete, inaccurate and in some cases shown to be perjured. For Example, the following issues were addressed at the hearings: a) Tardiness issue was dropped because proven inaccurate because of statistics, known to John Laverty, who perjured himself over the tardiness issue and then recanted on the stand stating that he knew which teachers were regularly more tardy; b) Performance evaluation issues regarding incompetency were dropped because proven not only untrue but deliberately forced into a very short period of time directly following Plaintiff's return from medical leave; c) Witness Kathy Murphy said that the Plaintiff's students were in the

compromising the Plaintiff's due process rights.

## 2. **PLAINTIFF HAS A VALID CLAIM FOR RETALIATION**

The Defendant argues that the Plaintiff does not have a valid §1983 based on retaliation under the Equal Protection clause. However, §1983 is usually a proper vehicle to bring a claim for retaliation. For example, in Muhammad v. Close, 02-9065 (United States Supreme Court 2004), the United States Supreme Court allowed the Plaintiff, an inmate to bring a §§ 1983 action, alleging that the Defendant, a guard, had charged him with threatening behavior (and subjected him to mandatory prehearing lockup) in retaliation for prior lawsuits and grievance proceedings against Defendant. In Crawford-el v. Britton, 523 U.S. 574 (1998) the court allowed the Plaintiff to file suit under 42 U.S.C. § 1983, alleging that respondent's diversion of his property was motivated by an intent to retaliate against him for exercising his First Amendment rights.

The Defendants cite Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996) for the proposition that Plaintiff may not bring a retaliation claim under §1983 and the equal protection clause for complaints of racial discrimination. In Bernheim, the Plaintiff made an equal protection claim based on retaliation for her complaints of discrimination. The Plaintiff believes that, having filed a constitutional claim, her right to be free from retaliation should be protected by the equal protection clause, as are other constitutional claims.

## 3. **THE PLAINTIFF HAS A VIABLE EQUAL PROTECTION CLAIM**

The Fourteenth Amendment's right to equal protection is "essentially a direction that all persons similarly situated should be treated alike." The Equal Protection Clause is violated when the state distinguishes between individuals based on "unreasonable, arbitrary or capricious differences that are irrelevant to a legitimate government objective." Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir.

1996). In the case at bar, the Defendants focus on the fact that the hearing process had to be stopped because the neutral arbitrator did not have payment arrangements with the Plaintiff, so rather than making other reasonable arrangements, i.e. future payment arrangements, a new hearing panel, etc., the Board decided to terminate the Plaintiff. This was an arbitrary decision, one that has never been made against any other teacher in the Hartford School system. The difference with the Plaintiff is that she had previously filed a lawsuit regarding race, age, gender and disability discrimination, and the School Board wanted to terminate her, rather than giving her a full hearing as it would any other tenured teacher. There was no legitimate government objective, just a desire to terminate Ms. Myers after a long arduous disagreement about Ms. Myers' civil rights.

**C. THERE IS ADEQUATE EVIDENCE TO SUPPORT A CONSPIRACY CLAIM**

The elements of a claim under 1985(3) are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . .; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

In the case at bar, the State Board of Trustees, along with Ann Bird and Anthony Amato, acted in concert to deprive Ms. Myers of her property interest in her employment by denying her due process rights to a pre-termination hearing to which she was entitled. Ann Bird falsely reported to the State Board of Trustees that Ms. Myers waived her right to the pre-termination hearing. Anthony Amato placed the subject on the Agenda. The Board passed over Item 31 on the agenda of the November 6, 2002 meeting, which related to Ms. Myers termination. In secret, the Board met and voted to terminate Ms. Myers. These are all acts in furtherance of a conspiracy to deprive Ms.

Myers of her federally protected due process rights, and thus the Plaintiff can meet a prima facie case of conspiracy under 42 U.S.C. §1985.

**D. THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

Government officials are shielded by qualified immunity when performing discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the case at bar, the Defendants are not entitled to qualified immunity because they were aware that they were violating a clearly established constitutional right of Plaintiffs, of which a reasonable person would have known at the time in question.

**1. DEFENDANTS NEGRON, AL-GHANI, BOUCHER AND KARSKY**

As part of their Motion for Summary Judgment, the Defendants produce Affidavits from Negron, Al-Ghani, Boucher and Karsky, all of which include a letter from Thomas B. Mooney dated November 6, 2002 as Exhibit 1. They each clearly state that they relied on the letter in making their decision to terminate the Plaintiff. The letter, however, informs each of them that it is "possible that the teacher could prevail with her claim that her right of due process was violated, with related damages." Although they were informed and were aware that they may be violating Ms. Myers's clearly established, federally protected due process rights, the Defendants terminated her anyway, thereby waiving their right to qualified immunity.

### 2. ANN BIRD

Ann Bird acted in furtherance of the conspiracy when she reported that the Plaintiff had waived her right to a hearing. At no time did Ms. Myers waive her right to a hearing. As a matter of fact, the Defendants were notified by both Plaintiff's Counsel and by Mr. Taquilaya at the November 6th hearing that the Plaintiff was not waiving any rights and wanted to complete the hearing process Ms. Bird's representations that Ms. Myers waived her due process rights was certainly a violation of "clearly established statutory or constitutional rights of which a reasonable person would have known," and certainly, as Ms. Bird is Corporate Counsel for the City of Hartford, she is aware that due process is a constitutional right. Therefore, Ms. Bird cannot claim qualified immunity.

### 3. ANTHONY AMATO

Superintendent Amato immediately took the position that the Plaintiff was waiving her right to a hearng and her right to due process. Amato placed the motion to terminate Ms. Myers in front of the Board of Trustees knowing full well that the Plaintiff never waived her due process rights. (See Affidavit of Taquilaya ¶14, 17) The only person with the power to create the Agenda for the November 6th, 2002 meeting was the Superintendent of the Schools. Amato knowingly violated Ms. Myers federally protected due process rights, thereby waiving his right to qualified immunity.

## E. THE INSTITUTIONAL DEFENDANTS ARE PROPER DEFENDANTS

### 1. STATE BOARD OF TRUSTEES

The Defendants argue that the Plaintiff, by erroneously referring to the Defendant State Board of Trustees for the Hartford Public Schools as the "State Board of Trustees for the City of Hartford"

by the city council, the Hartford Board of Education prior to June 1, 1997, or the State Board of Trustees for the Hartford Public Schools."

Moreover, the Hartford Board of Education has ratified all past acts of the State Board of Trustees by accepting their Resolution once the Board of Education regained control. In addition, the Hartford Board of Education is a rightful defendant because it has the power to restore the Plaintiff to her former position or to continue the hearing process. For all of these reasons, the Hartford Board of Education is a proper Defendant in this matter.

**F. PLAINTIFF CAN ESTABLISH "MONELL LIABILITY"**

In Monell v. Department of Social Services of the City of New York, the Court held that a municipality could be subject to liability under 42 U.S.C. §1983 for the execution of municipal policies or customs created by the municipality, its lawmakers or by "those who edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. 658, 694 (1978). In the present case, the State Board of Trustees would be such a policy-maker.

In order for the City of Hartford to be liable for the State Board of Trustee's actions, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cr. 1995). In the case at bar, the State Board of Trustees (1) passed a resolution that (2) denied a tenured teacher (3) her right to due process. There is no question that a resolution by the board is an official policy or custom. The resolution denied Plaintiff, a tenured teacher with a property interest in her job, a right to due process, given that she was not given an opportunity to present her case during the hearings. The Plaintiff can meet the Monell test.

## III. CONCLUSION:

The Plaintiff requests that the Court deny the Defendant's Motion for Summary Judgment as to each and every .

THE PLAINTIFF

By____________________
Francis A. Miniter
Christine E. Corriveau
Miniter & Associates
100 Wells Street Unit 1-D
Hartford, CT 06103
860-560-2590 ct09566

CERTIFICATION

This is to certify that a copy of the foregoing has been hand delivered to the following counsel of record this 3rd day of July, 2004:

Diana Garfield, Esq.
Joseph W. McQuade, Esq.
Kainan Escalera & McHale, PC
21 Oak Street Suite 601
Hartford, CT 06106

____________________
Christine E. Corriveau