UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEVERLY MYERS : | |
| : | CIVIL ACTION NO: |
| vs. : | 303cv0652(pcd) |
| : | |
| THE CITY OF HARTFORD ET AL : | July 12, 2004 |
| : | |

### AFFIDAVIT OF BEVERLY MYERS

The undersigned, being over the age of eighteen years and believing in the obligations of an oath, and being duly deposed, hereby make affidavit and state:

1. I am an individual citizen resident in the Town of Bloomfield, County of Hartford, and State of Connecticut.

2. The Defendants Edna Negron, D. Anwar Al-Ghani, Jim Boucher, and Felix Karsky were all members of the State Board of Education for the City of Hartford who were present at and took part in the actions described herein.

3. Defendant State Board of Trustees was the agent of the City of Hartford for all matters pertaining to education and was solely responsible for the management of the Hartford School District during the relevant time periods.

4. Defendant Ann Bird was at all relevant times the Associate Corporation Counsel for the City Of Hartford assigned to the Board of Education and also served as counsel at meetings of the State Board of Education.

5. Defendant Anthony Amato was at all relevant times until, on information and belief, November 1, 2002, the Superintendent of Schools for the City of Hartford.

1

6. Defendant Hartford Board of Education is the Successor in interest to the State Board of Trustees.

7. From 1978 until terminated as described herein on November 6, 2002, I was employed as a teacher by the City of Hartford, through the Board of Education (latterly the State Board of Trustees for the City of Hartford).

8. I am a black female aged fifty seven at the time of my termination. My termination was based on my age, race, gender and disability and I initiated a discrimination lawsuit in July, 2002, entitled Beverly Myers v. John Laverty and City of Hartford, Hartford Public Schools, bearing the Civil Action No. 3:02CV1152 (AWT). At that time I was a tenured teacher in the Hartford Public School system.

9. In or about early September, 2001, the City of Hartford and the State Board of Trustees informed me in writing of their intent to terminate me pursuant to the provisions of Connecticut General Statute ("C.G.S.") §10-151b(b), which provides in relevant part for a trial of the termination request before either a single arbitrator selected by the Board of Education, or by a three member panel, with one arbitrator selected by the teacher, one selected by the Board of Education, and a third person selected neutrally.

10. I elected a three member panel, and appointed Nukilwa Taquilaya. The City of Hartford appointed John W. Romanow. Mark L. Irvings was neutrally chosen and was the Chairperson of the panel.

11. The panel first convened on or about May 13, 2002. Prior to that date, the anticipated fees of Mr. Irvings, the neutral panel member and Chairperson, were addressed in writing and a fee schedule agreed upon between myself and Mr. Irvings. As later stated by Mr. Irvings, I kept to that

me until the Thursday morning after I returned from medical leave, but Miss Marisol, a paraprofessional, testified that she had spoken to Laverty about it at about 2:30 or 3:00 pm, on the Friday before I returned to school and before Laverty left for Boston

14. The Board of Education was compelled by the Panel to drop one of its charges during the cross-examination of its first witness. At the time of the hearing on September 13, 2002, the Board had presented about nine (9) witnesses and had failed to prove anything against me. Defendants' allegations against me were pretext and the real reasons for my termination were based on my race, age, gender and disability.

15. Shortly before the hearing on September 13, 2002, Mr. Irvings wrote to counsel for the parties about payment arrangements for hearings not yet held and indicated that he wanted to be paid in advance on the basis of the estimated number of future hearing days. I believed that continued payment of instalments would be acceptable as that agreement had already been made.

16. Just as the hearing on September 13, 2002 was about to commence, Mr. Irvings took my attorney aside and demanded payment in full at that time for hearings which had not yet occurred and did so in the presence of counsel for the Board. As the discussion continued, the neutral panel member allowed Mr. Stacey to attend this discussion but I was not allowed to participate in the discussion.

17. Defendant Ann Bird disclosed to Mr. Irvings the nature, amount, and manner of my paychecks and the same information about the next expected paycheck. She did so in the presence of the other two panel members. She later published this information by repeating it on the record of the hearing that day.

18. I feel that in so doing, Defendant Ann Bird contributed to the breach of ethics which

had occurred and prejudiced my position with Mr. Irvings.

19. As a result of the events described in the preceding paragraphs, and considering the conflict of interest arising from the breach of contract and breach of ethics, the panel members met privately and decided that they could no longer judge the case before them and should resign. The panel met on the record with the parties and officially resigned. I had not had any opportunity to begin presenting my case when the panel resigned.

20. I then requested the Defendants to restore me to my position or continue the arbitration process.

21. Without permitting me to exhaust my administrative remedies, without permitting due process of law, and instead of continuing the hearing process with a new panel which would have the benefit of the transcripts of testimony from the previous hearing days, the Defendants Amato, Bird and Stacey wrongfully, maliciously and deceptively placed a motion before the State Board of Trustees for the Hartford Public Schools, falsely claiming that I had waived my right to a hearing under C.G.S. §10-151b(b).

22. The State Board of Trustees met on November 6, 2002, and Item 31 of the Agenda was my termination for alleged waiver of right to hearing. Marilda Gandara was absent from the said meeting of the Board. Counsel for Ms. Myers and Mr. Nukilwa Taquilaya, the panel member I a appointed, addressed the Board to inform them that the representation of a waiver made to them was false and deceptive. No presentation of evidence was permitted.

23. Chairman Tom Ritter recused himself.

24. The Board voted to pass over Item 31.

25. The hearing adjourned without further action of the Board on Item 31 of its Agenda.

payment plan "religiously" and that he had no problem with performing the arrangement.

12.   Hearings were held on May 13 and 14, June 10, 24 and 26, July 15 and September 13, all in the year 2002.

13.   During such hearings, The Board of Education presented evidence that was incomplete, inaccurate and in some cases shown to be perjured. For example, the following issues were addressed during the hearings:

a) Tardiness issue was dropped because proven inaccurate because of statistics, known to John Laverty, who perjured himself over the tardiness issue and then recanted on the stand stating that he knew which teachers were regularly more tardy;

b) Performance evaluation issues regarding incompetency were dropped because proven not only untrue but deliberately forced into a very short period of time directly following my return from medical leave;

c) Witness Kathy Murphy said that my students were in the hallway without supervision on May 2nd at 4th Period, and that it could only have been at that date and time, but my attorney proved that my class was being evaluated at that very time on that day by John Laverty with my students all present in my classroom;

d) Rhonda Niles testified that she didn't speak tome all year but there was proof that she had spoken to me after I sent her a gift after her mother had passed away;

e) Laverty testified that Dorothy Carrigan had a problem working with me but Carrigan testified that she had no problem working with me but that she wanted to chair the social studies program and I intimidated her because I knew more about social studies;

f) Laverty testified that he did not know about the petition that students circulated regarding

26. On or about November 11, 2002, I received a letter informing me that the Board had terminated me. Upon further inquiry, I gained information upon which I formed a belief that following the adjournment of the Public Hearing of November 6, 2002, the Board illegally met in secret and voted to terminate me without a public record or debate before the public.

27. I know of no other teachers who were terminated before receiving a full hearing prior to their termination.

28. On or about July 2, 2002, I brought an action in the U. S. District Court for the District of Connecticut against Defendants Board, City of Hartford, Amato, and other persons, alleging violations of my civil rights under 42 U.S.C. §1983 and for related causes of action.

Dated at Hartford, Connecticut this 30th day of July, 2004.

_____
Beverly Myers

Subscribed and sworn to before me this 30th day of July, 2004.

_____
Christine E. Corriveau