UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEVERLY MYERS : | DOCKET NO. |
| vs. : | |
| CITY OF HARTFORD, et al : | 303CV0652 AWT |
| : | February 3, 2003 |

AFFIDAVIT OF NUKILWA TAQUILAYA

THE UNDERSIGNED, being duly sworn, makes oath and says as follows:

1.  I am over the age of eighteen years and I understand and respect the obligation of an oath.

2.  I make this oath on the basis of my personal knowledge. If anything in here is based on information and belief, it will be so stated and the basis therefor given.

3.  I am employed at Trinity College in Hartford, Connecticut as Coordinator of the Trinity Connecticut Campus Compact Program. Prior to my involvement as a panel member in "The Matter of Superintendent of Hartford Public Schools and Tenured Teacher Beverly Myers" (the "10-151b Proceeding") I had been involved in the arbitration or mediation of other labor issues.

4. Early in the year 2002, I was appointed as an impartial panel member in the 10-151b Proceeding by Beverly Myers. Appointed by the Superintendent of Schools was John W. Romanow. The neutrally appointed panel member was Mark L. Irvings, who was Chair of the panel.

5.  The hearing commenced on May 13, 2002 and continued on May 14, 2002, June 10, 24 and 16th, and July 15, 2002. A hearing was scheduled for September 13, 2002.

1

6. During the course of testimony through July 15, 2002, the Superintendent was required by a unanimous panel to withdraw its main charge against Beverly Myers, namely that she should be dismissed on the basis of a negative evaluation given her in May 2001. Furthermore, despite the presentation of numerous witnesses by the Superintendent, no conduct warranting dismissal had been testified to by any witness.

7. On the morning of September 13, 2002, before the hearing was scheduled to commence and after all parties and panel members has arrived, Mr. Irvings made an issue of payment of future fees to him.

8. Prior to that time, I had not been privy to his agreements with the parties. From the discussion, which took place in the hallway outside the hearing room and in my presence, I learned from him that Ms. Myers had made installment payments up to an amount specified by him and had, in Mr. Irvings own words, "religiously" made all the payments and was fully paid to that time. Mr. Irvings, despite this, expressed his unwillingness to proceed unless his payment in full for all future hearings were paid for at that time, based on the maximum number of hearing days he estimated.

9. Counsel for Ms. Myers indicated that she was agreeable to continuing that installment payment plan, to which Mr. Irvings had already agreed and that his demand was prejudicial to her. Mr. Irvings rejected this proposal to continue the existing agreement.

10. I was shocked and surprised by Mr. Irvings' demands and embarrassed that he made them in front of the other panel members and especially embarrassed that he made them in front of Attorney Ann Bird, counsel to the Superintendent, and in the presence of Robert Stacey, the Superintendent's representative at the hearings. I was also concerned that he was demanding payment in full for hearings that had not yet occurred and which might never occur.

11. Attorney Ann Bird intervened in the proceeding to disclose to Mr. Irvings salary payment information regarding Beverly Myers, including amounts and dates on which she received and would receive salary payments.

12. Counsel for Beverly Myers objected that Mr. Irvings' demands constituted a change of terms and that the public nature of the discussion in which he put this demand was prejudicial to his client.

13. In view of this dispute, the three panel members met privately and determined that they could no longer serve as an unbiased hearing panel. In my own view, Mr. Irvings had acted unethically and in breach of what he said the existing payment agreement was and that the information discussed should never had been made known to the other panel members. As a result of the private discussion, the panel convened the hearing that day for the sole purpose of resigning. A copy of the transcript of that hearing is attached hereto as Exhibit A.

14. I was further shocked when I later learned that the Superintendent was taking the position that Beverly Myers had waived her right to a hearing and that he was placing a motion before the State Board of Trustees for the Hartford Public Schools to terminate her on the basis of such alleged waiver.

15. Ms. Myers never waived any rights in the hearing. She and her counsel vigorously contested the allegations of the Superintendent and at the time that the panel resigned, had the better case.

16. In view of what I saw as a distortion of the facts, I attended the Public Hearing of the State Board of Trustees for the Hartford Public Schools on November 6, 2002 at the Hooker Elementary School, at 5:30 pm. I arrived early.

17. On information and belief, the motion to terminate Beverly Myers was put before the Board by Superintendent Amato. Prior to the hearing, however, Superintendent Amato resigned and Robert Henry was appointed as Superintendent. Mr. Henry was present for the meeting of the Board.

18. Mr. Francis Miniter, Counsel to Bevery Myers, and I both spoke to inform the Board and Ms. Myers had never waived any rights. I told them exactly how the Panel came to resign and that it did not involve any waiver of rights by Ms. Myers.

19. I attended through to the very end of the meeting and its adjournment. When the item regarding the termination of Ms. Myers, Mr. Tom Ritter, the Chairperson of the meeting, recused himself. Marilda Gandara was not present.

20. There was no discussion of the motion, and a Board member moved to pass over the item. The vote carried. At no time during the hearing was there a discussion or vote on the Motion itself.

_____
NUKHWA TAQUILAYA

Subscribed and Sworn to
before me on this 3RD
day of February, 2003

_____
FRANCIS A. MINITER
~~Commissioner of the Superior Court~~
A Notary Public

4