EXHIBIT A

# ORIGINAL

PROCEEDINGS UNDER

CONNECTICUT GENERAL STATUTES

SECTION 10-151

- - - - - - - - - - - - - - - - - x

In the Matter of:

SUPERINTENDENT OF HARTFORD

PUBLIC SCHOOLS,

        and

TENURED TEACHER BEVERLY MYERS.

- - - - - - - - - - - - - - - - - x

CONTINUED HEARING ON APPEAL

Held Before

Impartial Hearing Panel

MARK L. IRVINGS, Chairperson

NUKILWA TAQUILAYA

JOHN M. ROMANOW

September 13, 2002



## The Cunningham Group, Inc.

111 Gillett Street *(Corner Asylum Ave.)*
Hartford, CT 06105
860-521-3664

Serving the Legal and Corporate Communities Since 1965

Nationwide 800-842-4486
www.cunninghamreporting.com

```
                    SEPTEMBER 13, 2002
                                                    2
 1   Appearances:
 2       For the Superintendent of Hartford
 3       Public Schools:
 4           OFFICE OF THE CORPORATION COUNSEL
 5           550 Main Street, Room 210
 6           Hartford, Connecticut 60103
 7           (860) 543-8575
 8               BY:  ANN F. BIRD, ESQ.,
 9               Assistant Corporation Counsel
10
11       For Tenured Teacher Beverly Myers:
12           MINITER & ASSOCIATES
13           147 Charter Oak Avenue
14           Hartford, Connecticut 06016
15           (860) 560-2590
16               BY:  FRANCIS A. MINITER, ESQ.
17                    DANIEL C. SPINETI, ESQ.
18
19
20
21
22
23
24
25
```

SEPTEMBER 13, 2002

3

1 ...The following is the
2 transcript of the Continued Hearing on Appeal
3 pursuant to Proceedings under Connecticut
4 General Statutes, Section 10-151, in the
5 matter of: SUPERINTENDENT OF HARTFORD PUBLIC
6 SCHOOLS and TENURED TEACHER BEVERLY MYERS,
7 held before MARK L. IRVINGS, Chairperson,
8 NUKILWA TAQUILAYA and JOHN M. ROMANOW, at the
9 offices of Hartford Public Schools, 153
10 Market Street, Hartford, Connecticut, on
11 September 13, 2002, at 11:40 o'clock a.m.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SEPTEMBER 13, 2002

4

1  THE CHAIRPERSON: I would like
2  to go on the record.
3  This has been a difficult
4  morning, but the panel, the hearing panel,
5  has decided that we face a fundamental issue
6  regarding the propriety of the procedure and
7  the trusted impartiality of the Panel.
8  None of this reflects on our
9  view of the evidence that has come in to date
10 or the likelihood of success of either side,
11 ultimately, on the substantive issues, but it
12 is imperative that everyone have confidence
13 in the integrity and the impartiality of the
14 hearing panel.
15 Prior to the first hearing,
16 bills were sent which projected the cost of
17 this process, a process voluntarily
18 undertaken by both sides, and there was a
19 payment arrangement made which Ms. Myers'
20 met, with absolute rigor, but it meant that
21 it was fully paid prior to the initiation of
22 the hearings.
23 We concluded for six days of
24 hearings and I sent, on August 7th, a bill
25 which covered the time and expenses already

SEPTEMBER 13, 2002

5

1 incurred, which was in excess of what was
2 prepaid, and a projection of the rest of the
3 scheduled hearings and a, quite frankly, a
4 cut-down estimate on ultimate study time,
5 including what it would take, with executive
6 sessions, to reach a conclusion in this case.
7         There was no response to that
8 in August.  September 4th I sent a revised
9 corrected bill, which I made an error on, a
10 corrected bill and reminded to both sides
11 that this had to be paid prior to
12 recommencing the hearings.
13         The City did pay, I got no
14 response whatsoever from Ms. Myers' or
15 Mr. Miniter's office.
16         Yesterday, as part of
17 discussions regarding requested postponement
18 of today's hearing to Mr. Miniter's trial,
19 his office was informed that Ms. Myers would
20 have to come with payment before today --
21 today.
22         I was told by Mr. Miniter that
23 Ms. Myers would make some payment in the next
24 week or two and then seek to establish a
25 payment schedule.

SEPTEMBER 13, 2002

6

1    The difficulty that this
2    imposes is that there is the creation and
3    impression of a potential appearance of
4    impropriety in the decision-making process if
5    we ultimately get into the position where we
6    are constantly having to be the bill
7    collector and garnisher of wages, to maintain
8    a neutral position, it just creates an
9    unbearable burden on our role.
10             If we ultimately have to make
11   decisions where we are owed money by one
12   side, if we decide the case in favor of the
13   party who has paid, the other side may feel
14   and then may bring action on the grounds that
15   we have decided the case because we are angry
16   about not having been paid.
17             If we decide the case in favor
18   of the side who has not paid, the side that
19   did pay will say: Well, you've decided that
20   because, you did it so you would get paid.
21             In any case, as I laid out
22   earlier, the way that is avoided is that
23   everybody's payment obligations are met
24   before.
25             Now, for whatever reason

CUNNINGHAM REPORTING ASSOCIATES

SEPTEMBER 13, 2002

7

1  that has not happened. We have made many
2  suggestions to try and alleviate the burden
3  on Ms. Myers and to allow this to go forward
4  without compromising the integrity of the
5  panel.
6              It was suggested that
7  Miniter's firm pay the past due payment
8  amount for today and that we, again,
9  establish the short payment schedule for the
10 balance, that was unacceptable and nothing
11 has come forward that has created a structure
12 that is acceptable. I guess, we're out of
13 the business of being bill collectors, which
14 is not our role in this.
15             And I have a greater concern
16 that in discussions of it, we have created
17 animosity, we have created a level of lack of
18 confidence and impartiality, which, I think,
19 prevents us from continuing in our role as
20 the hearing body in this case.
21             And hence, I think it is the
22 position of this panel that we are going to
23 terminate our role as the hearing body.
24             We will be sending a letter to
25 the board stating that, and, frankly, I'm

SEPTEMBER 13, 2002

8

1  not sure what happens after. That's for
2  others to determine, but I don't think the
3  process is well served by us continuing in a
4  situation where we have to compromise our
5  role and the appearance of our impartiality
6  in this.
7              Again, I say this without any
8  view as to the substance of the case, that
9  has been put on to date. It still remains,
10 in many ways, early on in the presentation of
11 the case.
12             Is there anything that either
13 of you would like to add or dispute?
14             MR. ROMANOW: No.
15             MR. TAQUILAYA: No. My only
16 comment is to make sure that it's fair and
17 impartial and that everyone was given a fair
18 opportunity to do what was required.
19             I feel that the feelings are
20 going to change and that they could be
21 prejudicial against one side or the other.
22             I don't want that to happen,
23 but there is some different feelings right
24 now, I think, all around, and I don't know if
25 we can render a fair and impartial decision.

CUNNINGHAM REPORTING ASSOCIATES

SEPTEMBER 13, 2002

9

1    THE CHAIRPERSON:
2  Mr. Miniter, any comments you want to make,
3  for the record?
4              MR. MINITER:  There is one
5  thing that did not --
6              THE COURT REPORTER:  I'm
7  sorry, sir.  I can't hear you.
8              MR. MINITER:  There is a
9  reference to a past-due amount.  To the best
10 of my knowledge, my client paid all sums
11 incurred prior to today.
12             THE CHAIRPERSON:  Just to
13 clarify that, what I was referring to was
14 that there have been six days of hearings,
15 one day of study preparing in between the
16 hearings, reviewing the record, and travel
17 expenses, the total cost of that was $9,085.
18             The total that had been paid,
19 to date, by both sides was $9,000 so the
20 past-due amount was a very small amount, $85,
21 that's of no significance.
22             There is also, already
23 incurred, particularly since there is an
24 advance requirement on cancellation, there is
25 an obligation that has been incurred for

CUNNINGHAM REPORTING ASSOCIATES

SEPTEMBER 13, 2002

10

1   today so that's the additional amount that
2   was referred to as past due.
3              The bill had been sent in
4   August and, again, on September 4th, that is
5   what has not been paid.  The arrangement that
6   was billed in the spring, Ms. Myers was
7   religious in paying, according to the fee
8   schedule.
9              MR. MINITER:  She offered to
10  make the same arrangements and that was
11  rejected and that's what lead to the second
12  set of discussions, which caused a change in
13  people's perceptions.
14             THE CHAIRPERSON:  Okay.  And
15  just so we're clear here, my understanding,
16  when you're talking about offered to make the
17  same arrangement, the initial arrangement was
18  a prepayment plan instituted prior and paid
19  prior to the hearings, and your offering,
20  now, what you've said, if I understand it, is
21  that in a week or two, today's costs will be
22  paid and, then, a payment plan going forward
23  from there, which is well after the terms of
24  the hearings and --
25             MR. MINITER:  No.

SEPTEMBER 13, 2002

11

1  THE CHAIRPERSON:  -- so it's
2  not --
3  MR. MINITER:  No.
4  THE CHAIRPERSON:  -- the same
5  situation.
6  MR. MINITER:  The next hearing
7  is not until towards the end of October,
8  payment made in another week or so and
9  payments made after that would, then, occur
10 prior to the hearing dates set for October.
11 It seems, to me, that that is
12 not quite accurate, we already have hearing
13 dates set after the end of October we would,
14 presumably --
15 THE CHAIRPERSON:  We have
16 hearings set November 5th, December, 4th and
17 December 5th, and those were confirmed in
18 July, I believe.
19 MS. BIRD:  I agree.
20 MR. MINITER:  Yes, I see.
21 Hold on a second.
22 What date do you have, because
23 I have several places in which I have dates
24 written down and at the moment I can't be
25 sure which ones I have written most recently.

CUNNINGHAM REPORTING ASSOCIATES

1   November 5th.

2   MS. BIRD: October 29th.

3   MR. MINITER: Yes.

4   MS. BIRD: November 5th,
5   December 4th and December 5.

6   MR. MINITER: It seems, to me,
7   there is plenty of time to have reasonable
8   arrangements made for that but, as I said and
9   as you've indicated, statements made in the
10  second hearing, in a discussion outside the
11  conference room on this, lead to the,
12  probably, the issue of confidence.

13  THE CHAIRPERSON: Can I ask,
14  since it may be a matter of import, what
15  those statements were?

16  MS. BIRD: I am very concerned
17  about the second issue of the second set of
18  discussions causing a change in people's
19  perception because I'm not aware of that.
20  Certainly, from the Superintendent's point of
21  view, we don't have any concern about any
22  such set of perceptions, from our point view
23  or to our knowledge.

24  Our concern is relating to the
25  issue of payment for the Chairman and the

SEPTEMBER 13, 2002

13

1  panel, as you've said before, and, I think,
2  that Mr. Irvings, you did set forth,
3  accurately, the sequence of events, but the
4  bill, requesting payment in advance of
5  today's hearing went out in August. We all
6  had it. We all understood that we were to
7  make arrangements for payment in advance and
8  that today, September 13th, the hearing today
9  was scheduled to begin at 10:00 o'clock.
10 Actually, we went on the record, I think,
11 about 11:40 because there had been
12 discussions about what possible arrangements
13 might be made for payment of the Chairman's
14 services.
15             As I understood it, it was the
16 stipulation of the Chairman that some payment
17 be arranged for in advance of today, but
18 perhaps you would accept something today and
19 you haven't been offered anything, in terms
20 of any payment today, and you did make it
21 very clear, in advance of today, that you
22 expected and required at least some payment
23 today and you haven't been offered anything
24 today.
25             I would note that when this

SEPTEMBER 13, 2002

14

1   came up we checked with human resources, with
2   the school system's data system to see when
3   the next payday was, and today is a payday
4   and Ms. Myers has had a direct deposit to her
5   account of pay this week, now that school has
6   begun, these last two weeks, school began
7   before August, --
8            MR. MINITER:  Is counsel
9   testifying?
10           MS. BIRD:  -- in a net amount
11  of $1,666.81 so --
12           MR. MINITER:  I object to the
13  recitation into the record of that material
14  by counsel and I ask that it be stricken.
15           THE CHAIRPERSON:  Your
16  objection is noted.
17           We are not in a hearing.
18  We're not in an evidentiary matter, as to the
19  substance of the case, but I am concerned
20  that you raise reference to something being
21  said in the second conference, and I would
22  certainly like to know what that was so that
23  we're clear with each other.
24           MR. MINITER:  Well, you said,
25  to me, that you have reference to --

SEPTEMBER 13, 2002
15

1        THE COURT REPORTER: I'm
2   sorry. I can't hear you.
3        MR. MINITER: You said a
4   reference to, when you said the fundamental
5   issue is the impartiality of the panel and it
6   was imperative for the confidence of the
7   panel, you said the discussions created a
8   lack of confidence.
9        Indeed, I had felt that a
10  reasonable arrangement had been made when you
11  and I had spoken privately. Then, a second
12  meeting was held, which involved not just
13  yourself and me, but also the representative
14  designated by the board, the representative
15  designated by the teacher and opposing
16  counsel, at which time the issue of payment
17  by my client was discussed, with substantial
18  comments being made from opposing counsel and
19  from the representative appointed by the
20  Board.
21       The arrangement, which I had
22  thought we had discussed and settled on,
23  suddenly became unsettled, and coercive
24  requests were made, which I felt were
25  undermining to the position of my client,

SEPTEMBER 13, 2002

16

1   especially, coming, as all this is, at a
2   point where the case put forth by the board,
3   unless something changes radically, is
4   horribly, horribly weak.
5               It appears to have, to us,
6   elements beyond just the initial issue that
7   you and I spoke about and that coercive
8   element, sir, is what raised the issue of
9   confidence.
10              THE CHAIRPERSON: Let me ask
11  you what you thought the arrangement you and
12  I had agreed on is, because I'm unaware that
13  we came to an agreement --
14              MR. MINITER: Okay.
15              THE CHAIRPERSON: -- so,
16  please, refresh my recollection.
17              MR. MINITER: Okay. As to my
18  client's arrangement, a stronger arrangement
19  would be made with the hearing schedule in
20  the next few months and that she was going to
21  get you a payment very shortly and that that
22  payment would take care of today's date.
23              As you know, I have been in
24  trial ever since your memo of the 4th, I have
25  been engaged in ten and twelve and sixteen

SEPTEMBER 13, 2002

17

1  hour days at that trial and had asked that
2  this hearing be put off because I thought, in
3  fact, the jury was going to take beyond
4  yesterday to finish the case.
5              They finished the case
6  yesterday afternoon, and I got reinvolved in
7  the matter and spoke to my client last night
8  and represented to you, first thing this
9  morning, that suitable arrangements would be
10 made, the details of which have not yet been
11 set out but knowing the payment arrangements
12 had been made before, for the first
13 installment, that she had kept, precisely, to
14 that, I had every expectation that that
15 pattern would be acceptable in this case and
16 I thought I had an indication, from you, that
17 pattern would be acceptable, the details of
18 which were to be resolved.
19              THE CHAIRPERSON: Just so we
20 clarify, to my recollection of our
21 discussion, I never accepted an arrangement
22 that was based on being paid at some time.
23 The details were important and unlike the
24 first instance, where your office contacted
25 me

CUNNINGHAM REPORTING ASSOCIATES

SEPTEMBER 13, 2002

18

1  promptly upon the issuance of my bill and
2  requested that there be a payment schedule
3  set out and proffered a schedule, which
4  resulted in complete payment prior to the
5  initiation of hearings, in this case there
6  was no word from your office, there was no
7  proffer of a schedule, there still has been
8  no proffer of a definite schedule, and you
9  may characterize the discussions, you're a
10 skilled advocate, you may characterize the
11 discussions to the -- for whatever ultimate
12 purpose you want to use them, that's fine,
13 but unfortunately it's not going to serve any
14 purpose to go through this any further.
15          This was not a situation, in
16 my estimation, poisoned, in any way, by any
17 panel member.  This was not a situation
18 poisoned in any way by counsel for the Board.
19 This was an unfortunate circumstance that has
20 evolved, and it just, clearly, has prevented
21 this panel from feeling that it can go
22 forward in this matter.
23          So I thank you very much.  I
24 wish you all the best of luck, particularly,
25 you.  I'm sorry that this is how it's

CUNNINGHAM REPORTING ASSOCIATES

SEPTEMBER 13, 2002

19

1   ending, but there is an importance to the
2   following of the process and the appearance
3   of propriety, and so that's what's going to
4   happen.
5           We are going to send a letter
6   to the board terminating.
7           Thank you, very much.
8           (Whereupon, the above
9   proceedings were adjourned at 11:59 o'clock
10  a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CUNNINGHAM REPORTING ASSOCIATES

SEPTEMBER 13, 2002

20

1    CERTIFICATE

2       I hereby certify that the forgoing 18

3    pages are a complete and accurate

4    computer-aided transcription of my original

5    stenotype notes taken in the Continued

6    Hearing on Appeal in the Matter of:

7    SUPERINTENDENT OF HARTFORD PUBLIC SCHOOLS and

8    TENURED TEACHER BEVERLY MYERS, which was held

9    before the MARK L. IRVINGS, Chairperson,

10   NUKILWA TAQUILAYA and JOHN ROMANOW, at the

11   Board of Education, 153 Market Street,

12   Hartford, Connecticut, on September 13, 2002.

13

14

15   *Margaret Gmerek*

16   Margaret Gmerek, L.S.R.

17   Court Reporter

18

19

20

21

22

23

24

25

CUNNINGHAM REPORTING ASSOCIATES