## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BEVERLY MYERS** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:03CV652 (PCD)** |
| **v.** | : | |
| | : | |
| **CITY OF HARTFORD, ET AL** | : | |
| | : | |
| **Defendants.** | : | **AUGUST 12, 2004** |

### REPLY BRIEF IN SUPPORT OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

Pursuant to D. Conn. L. Civ. R. 9(d), the Defendants, Edna Negron, D. Anwar Al-Ghani, Jim Boucher, Felix Karsky, Anthony Amato, Ann Bird (the "Individual Defendants), the "State Board of Trustees for the City of Hartford" and the Hartford Board of Education (collectively, the "Defendants") respectfully submit this brief in reply to Plaintiff's "Objection to Defendant's Motion for Summary Judgment" dated July 30, 2004 (hereafter, "Opposition" or "Opp.") and in support of their Motion for Summary Judgment.

Plaintiff's Opposition is remarkable for its lack of direct or circumstantial evidence to support its claims. In support of her position, Plaintiff offers: her own affidavit which largely tracks the allegations contained in the complaint; a copy of the affidavit of Nukilwa Taquilaya, which was submitted in support of her unsuccessful motion for temporary injunction; a copy of

the September 13, 2002 proceedings of the arbitration panel[1] and the Affidavits of her counsel.

Because Plaintiff has failed to supply evidence sufficient to create a genuine issue of material

fact necessitating a trial, summary judgment should enter in favor of the Defendants on all counts

remaining in the Complaint.

  A.  <u>There are No Genuine Issues of Material Facts in Dispute</u>.

  Plaintiff agrees with Defendants' Rule 56(a)1 Statement of facts not in dispute except for

the following:

  1.  Paragraph 56: Attorneys Miniter and Corriveau provide affidavits denying that

they received a telephone call from Mr. Irvings before the September 13, 2004 hearing and

further stating: "I have no knowledge of any attorney from my firm speaking with Mr. Irvings.

Mr. Irvings was not specific as to which attorney he spoke to. The only attorneys who have

worked on Ms. Myers cases since that date are myself and [Miniter or Corriveau]." In his

deposition, Mr. Irvings testified that he believed that he spoke to either Mr. Spinelli or Ms.

Corriveau on the telephone." Irvings Tr. At 30 (Exhibit C). The transcripts of the hearing before

the arbitration panel reveal that Attorney Daniel Spineti appeared on behalf of Plaintiff on May

13-14, June 10 and July 15, 2002. <u>See</u>, Exhibit P attached hereto. Plaintiff has not supplied an

affidavit from Attorney Spinetti. Additionally, Plaintiff's denial of this fact does not create a

genuine issue of material fact. Plaintiff has admitted that Mr. Irvings sent a bill on August 7 and

---

[1] Previously supplied as Exhibit 8 to the Irvings Deposition transcript (Exhibit C) and Exhibit 6 to Plaintiff's responses to Defendants' Requests to Admit (Exhibit D).

September 4, 2002 to Plaintiff's counsel and the correspondence regarding Plaintiff's requested postponement of the September 13 hearing. In short, Plaintiff's efforts to undermine Mr. Irvings' recollection of his phone conversation has no effect on the question of whether Defendants are entitled to summary judgment.

      2.      Paragraphs 65 and 71: Plaintiff denies that the State Board of Trustees for the Hartford Public Schools ("State Board") considered Plaintiff's employment status and accepted the Superintendent's recommendation to terminate Plaintiff's employment on November 6, 2002. Rather, Plaintiff's witnesses are apparently under the impression that no vote was taken on the recommendation to terminate Plaintiff's employment that night. See, Plaintiff's Affidavit at ¶¶22-26.[2] The record is quite clear that the State Board acted on Superintendent Henry's proposed resolution to terminate Plaintiff's employment: Ann Bird submitted a proposed resolution for Mr. Henry's consideration (Exhibit 18 to Exhibit H [Affidavit of Ann Bird]); the State Board sought legal advice regarding Mr. Henry's resolution to terminate Plaintiff's employment (Exhibit 1 to Exhibits L-N); the minutes of the November 6, 2002 meeting of the State Board clearly indicate that the State Board approved a motion to adopt the resolution ((Exhibit 2 at Item 31 to Exhibit I [Affidavit of Webster Brooks]); and, finally, the tape recording of the meeting clearly indicates that the State Board approved a motion for Item 31--Mr. Henry's

---

[2] Plaintiff further represents: "Upon further inquiry, I gained information upon which I formed a belief that following the adjournment of the Public Hearing of November 6, 2002, the Board illegally met in secret and voted to terminate me without a public record or debate before the public." Plaintiff's Affidavit at ¶26. However, Plaintiff never provided any additional "information" regarding any "illegal" meeting of the State Board.

3

resolution to terminate Plaintiff's employment (tape recording attached hereto as Exhibit Q). In short, there is no factual dispute that the State Board voted to terminate Plaintiff's employment at its November 6, 2002 meeting. However, even if one were to assume that the State Board did not vote to terminate Plaintiff on November 6, 2002 and did so at a later date, Plaintiff has not created a genuine issue of material fact necessitating a trial of this action.

3.     Paragraph 83: Plaintiff denies that she has no particularized knowledge about other "targeted" employees. However, she fails to provide any particularized knowledge regarding any alleged illegal discrimination against other State Board employees. Again, all that Plaintiff offers is rank speculation.

B.     Plaintiff Has Not Stated a Viable Due Process Claim.

Plaintiff contends that she has a viable due process claim. Plaintiff's Opp. At 8. Plaintiff concedes that she received a copy of the charges against her and that she received at least a "general explanation of the employer's evidence." Plaintiff's Opp. At 8. However, she asserts that: "in no way did the Plaintiff receive an opportunity to present her side of the story before she was subjected to a loss of employment" as a result of her failure to pre-pay the neutral arbitrator and the arbitration panel's decision that it could not continue. Plaintiff's Opp. At 8. Rather than provide the court with any case law to suggest that Plaintiff was illegally denied an opportunity to be heard, Plaintiff discusses her view of the evidence presented and her

prognostications on how the proceeding would have turned out had she pre-paid the neutral arbitrator for the anticipated remaining hearing days.

While a governmental employer is required to provide a citizen faced with deprivation of a property right with an "opportunity for hearing appropriate in the nature of the case" (Loudermill, 470 U.S. at 542), the citizen may waive or forfeit that opportunity for a hearing. Boddie v. Connecticut, 401 U.S. 371, 378-379 (1971) (the Constitution provides the opportunity for a hearing which can be waived and is not fixed in form); see also, Leary v. Daeschner, 228 F.3d 729, 742-743 (6th Cir. 2000) (teachers' failure to appear for a pre-deprivation hearing waived opportunity to be heard); Freeman v. FDIC, 56 F.3d 1394 (D.C. Cir. 1995) (plaintiffs who "failed to avail themselves of the statutorily-prescribed administrative claims process" could not prevail on a due process claim because they were afforded an opportunity to be heard through the claims process). In this case, Plaintiff chose to proceed with private counsel (rather than union representation), chose to proceed before a three-member panel of arbitrators (rather than electing a hearing before the State Board or a hearing before a single arbitrator) and then chose not to pre-pay the neutral arbitrator for the anticipated remaining time. Connecticut General Statutes §10-151(d) provided Plaintiff with an opportunity to be heard. Plaintiff elected the means by which the hearing would proceed—the three member hearing. Exhibit 9 to Exhibit H. Plaintiff was represented by counsel before and during the hearing. See, Exhibit H (Affidavit of Ann Bird and attached exhibits). Since she was represented by counsel and affirmatively

elected a hearing before a three member panel pursuant to statute, Plaintiff was aware of her payment obligations under that statute.  Additionally, there is no doubt that Plaintiff was aware of the need to pre-pay the neutral arbitrator.  Rule 56(a)1 Statement at 35-38.  Plaintiff's failure to abide by the payment rules established by the neutral arbitrator placed the neutral arbitrator in a creditor position vis-à-vis Plaintiff.  See, Exhibit 9 to Exhibit C (9/30/02 Letter from Irvings to Ritter).  As a result of her actions, the hearing panel could not continue the hearing.  Id.  Therefore, Plaintiff received all of the process that she was due and should not be rewarded for her failure to pre-pay the neutral arbitrator.

      C.      Plaintiff's Equal Protection Claims Must Fail.

Plaintiff attempts to undermine the Defendants' arguments regarding her equal protection claims.  Plaintiff's Opp. At 10-11.  In her Amended Complaint, Plaintiff has alleged equal protection claims based on race, age, gender and/or disability (Third and Fifth Counts).  Therefore, Defendants addressed her claim, as pled, and argued that Plaintiff has not presented any admissible evidence tending to establish that they illegally discriminated against Plaintiff on the basis of her race, age, gender and/or disability.  However, disregarding the allegations contained in the Amended Complaint, Plaintiff argues:

> the Defendants focus on the fact that the hearing had to be stopped because the neutral arbitrator did not have payment arrangements with the Plaintiff, so rather than making other reasonable arrangements, i.e. future payment arrangements, a new hearing panel, etc.; the Board decided to terminate the Plaintiff.  This was an arbitrary decision, one that has never been made against any other teacher in the Hartford School system.  The difference with the Plaintiff is that she had

6

> previously filed a lawsuit regarding race, age, gender and disability
> discrimination, and the School Board wanted to terminate her, rather than giving
> her a full hearing as it would any other tenured teacher. There was no legitimate
> government objective, just a desire to terminate Ms. Myers after a long arduous
> disagreement about Ms. Myers' civil rights.

Plaintiff's Opp. At 11. Thus, rather than pursue her claim of an equal protection violation based

on her race, age, gender and/or disability, Plaintiff argues that she is actually pursuing an equal

protection claim based on retaliation for previously filing a lawsuit. Once again, the Second

Circuit has not recognized a claim under the equal protection clause for retaliation following

complaints of racial discrimination. Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1998).

Additionally, Plaintiff has failed to provide any admissible evidence to suggest that she was

treated differently than anyone similarly situated.[3] Further, Plaintiff can present no evidence to

suggest that the State Board's decision was arbitrary or capricious. The record reflects that none

of the State Board defendants had ever encountered a situation like this one in the past and,

therefore, sought and relied upon the opinion of outside counsel. Exhibits K, L, M, N. In his

opinion letter, Mr. Mooney set forth all of the options available to the State Board, the

---

[3] Plaintiff has not provided any admissible or specific information regarding similarly situated teachers. Indeed, Plaintiff would be hard-pressed to offer evidence of similarly situated teachers because Plaintiff's situation presents a unique set of circumstances. First, Plaintiff elected to forego union representation during the termination process and elected to proceed with private counsel. Thus, rather than having the union foot the bill for the hearing, Plaintiff apparently chose to pay for private counsel as well as the services of the arbitrators out of her own pocket. Second, although she was aware of payment rules for the arbitrators and Mr. Irvings' payment requirements, Plaintiff chose not to pay her arbitrator (Mr. Taquilaya) at all and failed to pre-pay the neutral arbitrator. Thus, Plaintiff torpedoed her own hearing. As reflected in counsel's search of caselaw, this situation has never presented itself before.

Case 3:03-cv-00652-PCD    Document 60    Filed 08/12/2004    Page 8 of 12


shortcomings of each option and a recommended course of action.[4] Exhibit 1 to Exhibits K-N. Given the level of detail presented in the opinion letter and the fact that the State Board defendants followed the advice contained therein, it cannot be said that the State Board's decision was arbitrary. Likewise, Plaintiff has offered no evidence to suggest that the State Board's decision was capricious. Plaintiff has offered absolutely no admissible evidence to suggest that the State Board's decision was motivated by a desire to retaliate against Plaintiff for filing the earlier lawsuit. Plaintiff only offers supposition. Accordingly, Plaintiff has failed to present a genuine issue of material fact necessitating a trial of her equal protection claims.

      D.    <u>The State Board Member Defendants Are Entitled to Qualified Immunity</u>.

Plaintiff further argues that the State Board defendants (Negron, Al-Ghani, Boucher and Karsky) are not entitled to qualified immunity because the opinion letter from Attorney Mooney, upon which they relied, informed them that it is "possible" that Plaintiff could prevail on a due process claim even if they followed his advice. Plaintiff's Opp. At 12. According to the opinion letter, the State Board defendants faced risk no matter what course of action they took. This is precisely the type of situation that qualified immunity is designed to address. As a society, we do not want our volunteer public officials to face personal liability for making difficult choices on our behalf. The State Board defendants were presented with a unique set of circumstances,

---

[4] Mr. Mooney covered at least one of the suggestions advanced by Plaintiff—namely, the use of a new hearing panel. Mr. Mooney did not address Plaintiff suggestion of "future payment arrangements." Plaintiff's Opp. At 11. Presumably, this is because payment arrangements with the neutral arbitrator are not issues over which Defendants could exercise any control; such issue was controlled by statute and the practices of the particular arbitrator.

sought advice of qualified counsel and followed that advice. Thus, it appears eminently clear that the State Board defendants are entitled to the protections of qualified immunity.

F.    Plaintiff Cannot State a Claim Against the State Board.

With respect to the State Board, Plaintiff argues that, while the state would be immune from an action seeking monetary damages, the state is not immune from suits seeking injunctive relief, such as Plaintiff seeks here. Plaintiff's Opp. At 14. Each count remaining in the Plaintiff's Amended Complaint is brought pursuant to either §1983 or §1985. See, Amended Complaint. Both §1983 and §1985(3) allow for actions against a "person" who is alleged to have deprived a plaintiff of a constitutionally protected right or who engaged in a conspiracy to do so. 42 U.S.C. §§1983, 1985. The United States Supreme Court has squarely held that "a state is not a person within the meaning of §1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989). Departments and divisions of the state are also not persons for purposes of §1983 and, thus, a plaintiff may not maintain a §1983 cause of action against such an entity. Gaby v. Bd. of Trustees of Community Technical Colleges, 348 F.2d 62, 63 (2d Cir. 2003) (Board of Trustees of Community Technical Colleges is not a person for §1983 purposes). The Second Circuit has followed the Tenth Circuit in finding that a "state official," sued in his or her official capacity for injunctive relief would be a "person" for §1983 purposes. However, a state college board of trustees sued for prospective injunctive relief is not a "person" for §1983 purposes. Gaby, 348 F.3d at 63 (citing, McLaughlin v. Bd. of Trustees, 215 F.3d 1168, 1172 (10th Cir.

2000)). Therefore, summary judgment should enter in favor of the State Board on any remaining claims.

     G.    <u>Any Claims Against the Reconstituted Hartford Board of Education are Infirm</u>.

Plaintiff does not contest that the reconstituted Hartford Board of Education did not exist at the time that the alleged constitutional torts were committed. Because the reconstituted Hartford Board of Education did not exist when the alleged constitutional torts were committed, it was not a "person" subject to liability under §§1983 and 1985 at that time. However, Plaintiff argues that the reconstituted Hartford Board of Education is a successor in interest to the State Board and is a proper defendant for purposes of carrying out the prospective injunctive relief she seeks. Plaintiff's Opp. At 14-15.[5] Since, as established above, the State Board cannot be held liable under any of Plaintiff's §§1983 and 1985 causes of action, there is no liability for the reconstituted Hartford Board of Education to assume.[6] Because Plaintiff cannot maintain a cause of action against the State Board, she may not maintain a viable cause of action against the reconstituted Hartford Board of Education.

Therefore, summary judgment should enter in favor of the Defendants on all remaining claims in Plaintiff's Amended Complaint.

---

[5] Special Act 01-7 (Exhibit G) authorized the reconstituted Hartford Board of Education to take over management of the Hartford school district commencing December 3, 2002. Special Act 01-7(2)(b). It is not clear that the reconstituted Hartford Board of Education is a successor in interest to the State Board.
[6] Even if the court were to allow a cause of action to survive against the State Board, either the State Board or the reconstituted Hartford Board of Education must be dismissed from this action. Again, the reconstituted Hartford Board of Education has no liability independent of its alleged status as successor in interest to the State Board and the State Board no longer exists. Claims against both entities are duplicative.

DEFENDANTS EDNA NEGRON, D. ANWAR
AL-GHANI, JIM BOUCHER, FELIX KARSKY,
ANTHONY AMATO, ANN BIRD, STATE
BOARD OF TRUSTEES FOR THE CITY OF
HARTFORD AND THE HARTFORD BOARD OF
EDUCATION

By _____
     Joseph W. McQuade, ct 12121
     Diana Garfield, ct05551
     Kainen, Escalera & McHale, P.C.
     21 Oak Street
     Hartford, CT  06106
     Telephone (860) 493-0870
     Facsimile (860) 493-0871
     jmcquade@kemlaw.com
     dgarfield@kemlaw.com
     Their Attorneys

11

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Reply Brief in Support of Motion for

Summary Judgment was sent via first class U.S. mail on this the 12th day of August, 2004 to:

    Christine E. Corriveau, Esq.
    Francis A. Miniter, Esq.
    Miniter & Associates
    100 Wells Street, Suite 1D
    Hartford, CT  06103

_____
                        Joseph W. McQuade

14949

12