UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Beverly MYERS, | : | |
|     Plaintiff, | : | |
| | : | |
| -vs- | : | Civil No. 3:03cv652 (PCD) |
| | : | |
| CITY OF HARTFORD, | : | |
|     et al. | : | |
|     Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Defendants, Edna Negron, D. Anwar Al-Ghani, Jim Boucher, Felix Karsky, Anthony Amato, Ann Bird (the "Individual Defendants"), the State Board of Trustees for the City of Hartford, and the Hartford Board of Education (the "Institutional Defendants") (collectively, the "Defendants") move [Doc. No. 54], pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all counts of Plaintiff's Amended Complaint.

**II.     Background**

From 1978 until the time of her dismissal in 2001, Beverly Myers ("Plaintiff") was employed as a teacher in the Hartford Public School System and obtained tenure. (Compl. ¶¶ 10, 11.)  In September of 2001, Defendants notified Plaintiff that they were considering terminating her contract pursuant to Con. Gen. Stat. § 10-151(d) (2000) ("The Teacher Tenure Act").[1]

---

[1] Section 10-151(d) states in part: "Prior to terminating a contract, the superintendent shall give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with the superintendent, within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefore."

(Compl. ¶ 12.) Plaintiff then requested an evidentiary hearing before an impartial hearing panel.[2] (Compl. ¶ 13.)

Although six days of hearings were conducted, (May 13, 14; June 10, 24, 26; and July 15) the panel was unable to arrive at any final findings of facts or recommendations. (Compl. ¶¶ 15-17.) Due to the unanticipated slowness of the case's progress, the panel notified both parties that additional hearings would be required. (Compl. ¶ 17.) On August 7, 2002, both parties were notified that Mark Irvings, the neutral panel member, required payment in advance for these additional hearings.[3] (Compl. ¶ 17.) Plaintiff, however, made no further payments. (Compl. ¶¶ 17-18.)

On September 13, 2002, the panel met on the record to explain that, because of Plaintiff's refusal to pay the neutral panel member in advance, it could no longer judge the case. (See Aff. of Nukilwa Taquilaya, Exh. A, Transcript of Continued Hearing on Appeal [Doc. No. 3]). The panel disbanded without issuing any findings of fact or recommendations. No further hearings were scheduled. (Compl. ¶¶ 21, 24.)

On November 6, 2002, Defendants terminated Plaintiff's contract. (Compl. ¶ 24.) Plaintiff contends that she did not waive her right to an evidentiary hearing, and that she sought to continue the hearing process. (Compl. ¶ 23.) Moreover, Plaintiff claims that Defendants'

---

[2] In accordance with § 10-151(d), the hearing panel consisted of three members: one selected by Plaintiff, one by Defendants, and a third ("neutral panel member") mutually chosen by the other two members. Compl. ¶ 12.

[3] The neutral panel member notified Plaintiff's counsel that payment prior to the hearings, "fundamentally went to the integrity of the process [because] if one side owes money and [the neutral member] rule[s] in favor of that side, the opposing party may perceive that the decision was impacted by irritation of not being paid. The way to avoid this problem is to have full payment from both parties ahead of time." (Def.'s Mem. Supp. Opp. Pl.'s Applic. for Prelim. Inj., Exh. C [Doc. No. 16]).

2

decision to terminate her employment violated § 10-151(d) because the decision was made absent the findings of fact or recommendations of an impartial hearing panel. Id.

**III.  Discussion**

Defendants argue that summary judgment should enter in their favor on: (1) Count Seven of Plaintiff's Amended Complaint because she cannot establish a viable due process claim pursuant to 42 U.S.C. § 1983; (2) Count One of Plaintiff's Amended Complaint because she cannot establish a valid claim pursuant under the equal protection clause for retaliation following complaints of racial discrimination; (3) Counts Three and Five of Plaintiff's Amended Complaint because she has failed to proffer any evidence suggesting that they took any action based on Plaintiff's race, gender, age, or alleged disability; and (4) Counts Two, Four, Six, and Eight of Plaintiff's Amended Complaint because she has not proffered any evidence establishing that Defendants conspired to deprive her of her rights. In addition, Defendants argue that they are entitled to summary judgment because: the Individual Defendants are entitled to qualified immunity; the State Board of Trustees for the City of Hartford did not and does not exist; the State Board of Trustees for the Hartford Public Schools is entitled to sovereign or Eleventh Amendment immunity; the Reconstituted Hartford Board of Education was not involved in the actions forming the basis of the amended Complaint; and Plaintiff has failed to allege and substantiate a municipal policy, custom, or practice against the Institutional Defendants.

**A.  Section 1983 - Due Process**

Defendants argue that summary judgment should enter in its favor because Plaintiff has not established in Count Seven of her Amended Complaint a viable due process claim because she had been notified of the charges against her, received a general explanation of the employer's

evidence, and was afforded the opportunity, to which she did not avail herself, to present her side of the story before she was deprived of her property interest–her tenured teaching position. More specifically, Defendants contend that Plaintiff squandered her opportunity to be heard by not submitting her payment to the neutral arbitrator for the anticipated remaining time. Plaintiff counters that her failure of payment was "simply a technical difficulty" that could have been corrected without compromising her due process rights.

"An employee who has a property interest in his employment 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985)." Munafo v. Metro. Transp. Auth., 285 F.3d 201, 212 (2d Cir. 2002). Defendants do not dispute that Plaintiff had a property interest in her position, and Plaintiff concedes that she received a notice of the charges against her and an explanation of her employer's evidence. Accordingly, the only issue before this Court is whether Defendant provided Plaintiff with an opportunity to be heard.

Section 10-151(d) of the Connecticut General Statutes provides that prior to terminating a tenured teacher's contract of employment the employer shall, upon the teacher's written request, commence a hearing (A) before the board of education or a subcommittee of the board, (B) if indicated in such request or if designated by the board before an impartial hearing panel, or (C) if the parties mutually agree, before a single impartial hearing officer chosen by the teacher and the superintendent. Plaintiff chose the option provided under subsection B.

When a teacher requests a hearing before an impartial panel pursuant to section 10-

151d(B), it "shall consist of three members appointed as follows: The superintendent shall appoint one panel member, the teacher shall appoint one panel member, and those two panel members shall choose a third, who shall serve as chairperson." Id.

Section 10-151(d) mandates that a teacher, having chosen an impartial hearing, "shall share equally the fee of the third panel member or hearing officer and all other costs incidental to the hearing." Id. Plaintiff, therefore, in choosing to have an impartial hearing, in lieu of a hearing before the board of education or a subcommittee of the board, was provided with notice that she would be required to share the burden of payment for the third panel member. Defendant contends that Plaintiff was put on notice at the pre-hearing conference that she would be required to prepay the neutral arbitrator's fee, and he testified that Plaintiff had prepaid him for the first six days of hearings. When Plaintiff failed to prepay for the hearing scheduled for September 13, 2002, the hearings ceased, and the impartial panel disbanded without issuing any findings or recommendations.

Although the statute is not clear on when the teacher must remit her payment to an arbitrator, Plaintiff was not only aware that she was required to prepay, but did so for the first six days of hearings. Plaintiff's memorandum is conspicuously lacking any explanation as to why she refused to pay the arbitrator. Instead, she merely asserts, without elaboration or citation to a single case or statute, that "[t]here was simply a technical difficulty, one that could have been corrected without compromising the Plaintiff's due process rights." Plaintiff alleges that immediately before the September 13, 2002 hearing was about to begin, Irvings "demanded payment in full at that time for hearings which had not yet occurred," contrary to her belief "that continued payment of installments would be acceptable as that agreement had already been

5

made."

The Court is persuaded that the facts establish that Irvings made it clear to both parties that he must be prepaid before beginning the next round of hearings, which the parties were informed was scheduled to begin on September 13, 2002. For example, Defendants have proffered an email, dated August 7, 2002, from Irvings to both parties' attorneys, indicating that the parties must prepay "to cover the balance of the hearings and study time . . . necessary to decide the case and prepare a written decision." (Defs.' Rule 56(a)(1) Stt. Exh. C3.) Irvings did not receive a response from either party or their counsel. Almost one month later, on September 4, 2002, Irvings emailed the parties again, indicating that, in light of the fact that the next hearing was scheduled for September 13, 2003, "it [was] necessary that prepayment be made promptly" because "the prior prepayment [had] been more than expended on past hearings." (Id.) (emphasis added.) Irvings further stated that "If I do not hear from you on this quickly, I will have to start releasing scheduled hearing dates."

Plaintiff's counsel failed to contact Irvings until September 11, 2002, on which day he indicated that he was on trial in Bridgeport and that he would not be able to attend the hearing and was requesting a continuance. Irvings responded that he would consider postponing if Plaintiff agreed to be responsible for the entire cost of the late postponement. Otherwise, he indicated that Plaintiff's counsel should arrange for another attorney to appear for him. Defendants objected to the continuance request. Finally, Irvings testified that he had called Plaintiff's attorney's office on September 12, 2002, the day before the hearing, to indicate to

Plaintiff that it was imperative to come with a check the following day.[4] (Irvings Dep. at 30.)

Contrary to Plaintiff's assertion that her failure to prepay was a "technical difficulty," that could have been corrected without compromising her due process rights, Irvings also testified that after Plaintiff had arrived at the September 13 hearing, he made further attempts to have the hearing go forward. Irvings testified that he had suggested that Plaintiff pay her share of the fee for the hearing that day, and that he would again institute a payment plan so that she would have the balance of what she owed paid prior to the next hearing. Plaintiff, however, declined that offer, and proposed instead that, "in the next couple of weeks," she would make payment towards the September 13 hearing, but that there "was no other specific schedule put forth." (Id. at 34.) Lastly, Irvings suggested that Plaintiff's counsel prepay for the hearing that day and that he could thereafter arrange for payment from Plaintiff. Plaintiff's counsel, however, stated that he "had a policy against doing that."

Plaintiff's decision to pursue an impartial panel resulted, under section 10-151(d), in a concomitant obligation to share the burden of rendering payment to Irvings, the third panel member. An "opportunity" is defined as "a combination of circumstances, time, and place suitable or favorable for a particular activity or action." WEBSTER'S NEW INT'L DICTIONARY at 1583 (3d ed. 1981). Plaintiff's failure to fulfill her statutory obligation, which ceased the hearings before the impartial panel, does not negate the fact that, under the circumstances of this case, she was afforded the chance to have the panel to continue its hearings on September 13,

---

[4] Although Irvings testified that on September 12, 2002, the day before the hearings were scheduled to begin again, he "had spoken with Attorney Miniter or someone in his office," (Irvings Dep. at 30.), Attorneys Miniter and Corriveau both testified that they "did not receive a telephone call from Mr. Irvings on" September 12." (Corriveau Aff., Miniter Aff.)

2002.

Defendants have proffered sufficient evidence establishing that Plaintiff had been informed on more than one occasion of the necessity for prepayment. In addition, Irvings testified that his prepayment requirement was not arbitrary or capricious, as it "fundamentally went to the integrity of the process [because] if one side owes money and [the neutral member] rule[s] in favor of that side, the opposing party may perceive that the decision was impacted by irritation of not being paid." (Def.'s Mem. Supp. Opp. Pl.'s Applic. for Prelim. Inj., Exh. C [Doc. No. 16]). Finally, Plaintiff rejected a number of alternatives that Irvings suggested for satisfying her payment obligation to him for the September 13 hearing, so that the hearing could go forward. Accordingly, the Court concludes that Plaintiff was not deprived of her right to procedural due process in this case. See, e.g., Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000) (concluding that plaintiffs had been afforded all the process that they were due and had waived their due process rights by refusing to attend the hearing). Defendants' motion for summary judgment on Count Seven of Plaintiff's Amended Complaint is granted.

    **B.    Section 1983 - Retaliation**

Defendants argue that summary judgment should enter with regard to Count One of Plaintiff's Amended Complaint, alleging that they terminated her after she "brought an action in the U.S. District Court for the District of Connecticut against Defendants . . . alleging violations of her civil rights under 42 U.S.C. § 1983 and for related causes of action," because the Second Circuit has not recognized a claim for retaliation under the Fourteenth Amendment's equal protection clause. See Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1998) (explaining that it "kn[ew] of no court that has recognized a claim under the equal protection clause for retaliation

8

following complaints of racial discrimination" and that, "[g]iven the availability of Title VII, which [Plaintiff] chose not to invoke, we see no reason to break new constitutional ground in this case"). Plaintiff counters Defendants' argument by citing to Muhammad v. Close, 540 U.S. 749; 124 S. Ct. 1303; 158 L. Ed. 2d 32, and Crawford -el v. Britton, 523 U.S. 574, 118 S. Ct. 1584; 140 L. Ed. 2d 759 (1998).

The court will not address whether Plaintiff may bring her claim under the equal protection clause for retaliation following complaints of racial discrimination because, assuming arguendo that such a claim is colorable, Plaintiff has failed to establish a genuine issue of material fact for purposes of Defendants' motion. Plaintiff was suspended with pay on September 4, 2001 and was informed on November 8, 2001, that termination of her employment was under consideration. Although Plaintiff filed a complaint against Defendants in July 2002 ("Myers I"), and was thereafter terminated on November 6, 2002, she has failed to proffer any evidence establishing a genuine issue of material fact in support of the conclusory allegation in her Amended Complaint that "Defendants terminated [her] in violation of 42 U.S.C. § 1983 in retaliation for [filing the Myers I Complaint]." (Compl. ¶ 29.) The fact that Plaintiff had been suspended and informed that Defendants were considering terminating her employment months before she had filed her Complaint in Myers I requires Plaintiff, in opposition to Defendants' motion for summary judgment on this issue, to create an issue of fact with relation to her claim, beyond the allegations in her Amended Complaint. Because she has failed to meet her burden, Defendants' motion for summary judgment on Count One of Plaintiff's Amended Complaint is granted.

    **C.**    **Equal Protection**

Defendants next argue that summary judgment in their favor should enter on the Third and Fifth Counts of Plaintiff's Amended Complaint because Plaintiff has failed to proffer any evidence suggesting that they took any action based on Plaintiff's race, gender, age, or alleged disability.

"The Fourteenth Amendment guarantee of equal protection is 'a right to be free from invidious discrimination in statutory classifications and other governmental activity.'" Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996) (quoting Harris v. McRae, 448 U.S. 297, 322, 65 L. Ed. 2d 784, 100 S. Ct. 2671 (1980)).  That right is violated when the state distinguishes between individuals based on unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate government objective.  Bernheim, 79 F.3d at 323 (internal quotation marks omitted).

Although Plaintiff's Amended Complaint alleges that Defendants violated the equal protection clause by discriminating against her on the basis of her race, age, gender, or disability, she argues in her opposition memorandum that she was terminated for failing to prepay the arbitrator and thus, she was deprived of the full hearing previously provided to other tenured teachers.  Plaintiff argues that the Board's decision was not relevant to a legitimate government objective and that it was solely the result of a desire to terminate her after disagreeing with her allegations that it had violated her civil rights.

Plaintiff's Amended Complaint and opposition memorandum fail to establish a genuine issue of material fact that the Board discriminated against her on the basis of her race, age, gender, or disability.  It is likewise devoid of any facts establishing that the Board's action in this case resulted in any invidious discrimination based on distinctions between her and other tenured teachers based on unreasonable, arbitrary, or capricious differences that were irrelevant to a

10

legitimate government objective. Plaintiff's claim rests solely on the unsubstantiated conclusion that the Board treated her differently than other tenured teachers as a result of her inability to prepay the panel. This is bolstered by the fact Plaintiff presented the first case in which a tenured teacher failed to pay a panel member.

Plaintiff has not presented any evidence regarding how the Board has treated teachers similarly situated to Plaintiff, and the Court has already concluded in Part B that the fact that Plaintiff did not receive a full hearing did not result from an arbitrary or capricious decision of the Board. Indeed, the fact that Plaintiff's hearing was not concluded resulted not from the Board's decision to terminate the proceedings, but rather, from Plaintiff's decision not to satisfy her financial obligations with respect to the panel. Furthermore, Defendants have produced a letter establishing that, after Plaintiff failed to pay, they sought the advice of counsel who, upon review, provided them with a summary of possible courses of action. Although the Board's decision to seek counsel is not, by itself, conclusive of the fact that their decision was appropriate, Plaintiff's failure to adduce any evidence establishing a genuine issue of fact relating to its decision is insufficient to survive Defendants' motion for summary judgment with respect to Counts Three and Five of her Amended Complaint. Accordingly, Defendants' motion for summary judgment is granted with respect to Counts Three and Five of Plaintiff's Amended Complaint.

    **D.**    **Conspiracy**

The Second, Fourth, Sixth, and Eight Counts of Plaintiff's Complaint allege that

Defendants conspired to retaliate and discriminate against her in violation of 42 U.S.C. 1985,[5] and the due process[6] and equal protection clauses to the United States Constitution. More specifically, Plaintiff alleges that "Defendants acted in concert to effect the retaliation of termination against Plaintiff . . . based upon [her] race, age, gender and/or disability." Plaintiff also alleges in support of her claim of race and gender discrimination, that "during the tenure of Defendant Amato as Superintendent of the Hartford Public Schools, black employees, especially black female employees, were targeted for discipline and termination far more than were non-black employees, and non-black employees were promoted far more than were black employees." Defendants argue that summary judgment should enter in their favor on all four counts because Plaintiff has not proffered any evidence establishing that Defendants conspired to deprive her of her rights. The Court agrees.

"To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for

---

[5] 42 U.S.C. § 1985(3) provides in relevant part: "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

[6] Plaintiff's claim that Ann Bird and Anthony Amato acted in concert to deprive her of her property interest in her employment and depriving her of her due process rights by falsely reporting to the State Board of Trustees that she had waived her right to the pre-termination hearing is without merit. As discussed in part A, Defendants may reasonably have concluded that, as a result of Plaintiff's failure to pay the panel member as required by section 10-151d, Plaintiff had waived her right to a hearing before the panel.

the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  "[A] plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."  Id.  To sufficiently allege a conspiracy under section 1985(3), a plaintiff must allege with particularity overt acts by the defendant, as opposed to merely conclusory, vague, or general allegations that defendant conspired to deprive plaintiff of her constitutional rights.  Id.  "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  Id. (internal quotation marks omitted.)

The Court is not persuaded that Plaintiff has alleged with particularity, or proffered evidence in support thereof, overt acts engaged in by Defendants sufficient to establish a genuine issue of material fact with respect to her conspiracy claims.  Plaintiff's alleges in her Amended Complaint that "during the tenure of Defendant Amato as Superintendent of the Hartford Public Schools, black employees, especially black female employees, were targeted for discipline and termination far more than were non-black employees, and non-black employees were promoted far more than were black employees." Other than this unsubstantiated allegation, however, Plaintiff alleges no facts in the Amended Complaint, and has not proffered any evidence establishing an issue of fact, from which a racial, discriminatory, or retaliatory motivation the alleged conspiracy may be found or inferred. Because Plaintiff has not established a genuine

issue of material fact with respect to these claims, Defendants' motion for summary judgment with respect to Counts Two, Four, Six, and Eight of Plaintiff's Amended Complaint is granted.

## IV.     Conclusion

For the reasons stated herein, Defendants' motion for summary judgment is granted with respect to Plaintiff's entire Amended Complaint.

_____SO ORDERED.

Dated at New Haven, Connecticut, March __30__, 2005.

_____/s/_____

Peter C. Dorsey
United States District Judge